597 F.2d 28
 Wade S. MALHAS and Murray Dryer, Individually and
derivatively in the right of said corporation,
Plaintiffs-Appellants,
v.
Allan M. SHINN et al., Defendants-Appellees.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
v.
Robert L. VESCO et al., Defendants,
Wade S. Malhas et al., Intervenors-Appellants.
 Nos. 445, 471, Dockets 78-6108, 78-6140.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 7, 1978.
Decided April 16, 1979.
 
 Jay H. Landau, New York City (Underweiser & Underweiser, New York City, of counsel), for intervenors-appellants.
 Sheldon D. Camhy, New York City (Shea, Gould, Climenko & Casey, New York City, Michael W. Sigall, New York City, of counsel), for appellees.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 These are appeals from orders of the United States District Court for the Southern District of New York issued in connection with the election of directors to International Controls Corporation (ICC), conducted under the supervision of a court-appointed Special Master on April 25, 1978. The first order, issued prior to the election, refused to bar the holders of shares secured through the exercise of certain stock options from voting their shares. The second, issued after the election, certified the results and ordered that the elected nominees assume office. We find no error in the district court's determinations, and they are affirmed.
 
 
 2
 From 1973 to 1978, ICC, a Florida corporation, was governed by an interim board of directors appointed by the court below at the instance of the S.E.C. The S.E.C. had sought and obtained the discharge of the old board and the appointment of an interim one because of numerous securities law violations by ICC and certain corporate-allied individuals. In 1976, a group of shareholders petitioned the district court to order a shareholders meeting for the purpose of electing directors to replace the interim board. The court granted the request and appointed a Special Master to supervise the election.
 
 
 3
 On October 27, 1977, the Special Master submitted to the district court his "Plan and Recommendations" for the conduct and supervision of the election. The Special Master made it very clear in this report that the election would not be an "ordinary election of directors by the shareholders of an ordinary Florida corporation." He stated that the Florida corporate laws applicable to the election of directors had in effect been suspended by the court for the previous four years and that it would be inappropriate to apply these laws again until judicial responsibility for the election of directors had been terminated. He recommended among other things, therefore, that he be authorized to determine the eligibility of candidates for election, that he prepare the form of proxy, that no matters except the election of directors be considered at the shareholders meeting, that certain shares held by a court-appointed receiver be counted for quorum purposes but be ineligible to vote, and that the ten nominees receiving the highest numbers of votes be elected.
 
 
 4
 When the Plan and Recommendations were submitted to the district court, appellants' only pertinent objection of moment was to the recommendation that court-appointed interim directors be permitted to stand for election to the new board. Upon approval of the Plan by the district judge, appellants sought review in this Court on that issue alone. Following affirmance, See SEC v. Vesco, 571 F.2d 129 (2d Cir. 1978), the election proceeded.
 
 
 5
 Appellants advanced two contentions in support of their attempt to prevent the voting of stock option shares. They argued first that the interim directors had no authority to grant stock options without prior court approval. Second, they contended that the shareholder-approved stock option plan had terminated prior to the granting of the options in question. The district judge rejected the first argument, holding that he had given the interim directors "full power under applicable corporate law" to conduct the affairs of ICC and that this included the granting of stock options under a shareholder-approved plan, "a normal function of directors." See, e. g., Freedman v. Barrow, 427 F.Supp. 1129, 1136-38 (S.D.N.Y.1976). We are satisfied that the district court correctly interpreted his own grant of authority.
 
 
 6
 In support of their second contention, appellants pointed to the fact that ICC's stock option plan, as originally drawn, was approved by its shareholders in 1965. The plan's stated purpose was to encourage stock ownership by key employees and to act as an incentive to those employees "in the manner contemplated by Section 422 of the Internal Revenue Code of 1954, as amended." Under section 422, a "qualified stock option", for tax purposes, must be granted "within ten years from the date the plan is adopted or approved by shareholders, whichever is earlier." Appellants argued in the court below that because of the plan's reference to section 422, the right to grant options expired in 1975 and that therefore the granting of certain options in 1976 was invalid. See Exelbert v. Hydrophilics International, Inc., 43 A.D.2d 822, 351 N.Y.S.2d 145 (1974); But see Lovetri v. Vickers, Inc., 397 F.Supp. 293, 300 (D.Conn.1975). The court found it unnecessary to reach this question, because the plan had been amended in 1968 with shareholder approval so as to increase the aggregate number of shares that could be issued. The court held that under pertinent treasury regulations, See 26 C.F.R. § 1.422-2(b)(3), the 1968 amendment must be considered as the adoption of a new plan providing a new starting date for the ten-year period. We agree.
 
 
 7
 Appellants argue, nonetheless, that because ICC stated in certain prospectuses filed with the S.E.C. in 1969 and 1971 that options might be granted under the 1965 Plan until December 14, 1975, ICC was bound by those statements and could not grant options thereafter. The district court rejected this argument because it found that the options in question were granted under the 1968 amended or superseding plan. There was no error here. Absent any evidence of misrepresentation or misreliance, the provisions of the plan, rather than the filings, determined the propriety of the options. See Omdahl v. Omark Industries, Inc., 259 Or. 496, 501-02, 486 P.2d 1271 (1971).
 
 
 8
 Appellants contend next that the proxy solicitations on behalf of the successful nominees violated section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and Rule 14a-9(a) of the Commission, 17 C.F.R. § 240.14a-9(a), and that the district court erred in holding to the contrary. In the main, this contention concerns purchases of ICC stock by a partner in the law firm representing the corporation. The purchases were made shortly prior to the public announcement of the settlement in principle of a substantial claim against ICC but were promptly rescinded by the attorney when it was suggested that they might have been induced by inside information concerning the settlement. The attorney made public disclosure of his purchases when he submitted to the Special Master his written qualifications as a proposed candidate for election to the ICC Board. In a letter to the Special Master dated January 11, 1978, appellants' counsel referred to the attorney's purchases as thus disclosed and suggested that under the circumstances the attorney should not seek election as a director. The attorney thereupon withdrew his application.
 
 
 9
 The district court found that the appellants were aware of the basic facts concerning the questioned transaction but raised no objections to any proxy material with either the S.E.C., the Special Master, or the court. Quoting an affidavit filed by counsel for the S.E.C., the court held that there was "insufficient evidence of any violation of the federal securities law" to impair the integrity of the election. We agree. Assuming for the argument that the lawyer's aborted purchase of stock bore materially upon the qualifications of directorship candidates, the facts concerning the purchase were publicly disclosed several months prior to the election in the very litigation now before this Court. See Seibert v. Sperry Rand Corp., 586 F.2d 949, 952 (2d Cir. 1978).
 
 
 10
 Other attacks on the proxy materials are not of sufficient substance to warrant extended discussion. ICC's annual report was not proxy material the contents of which violated Rule 14a-9(a). See Markewich v. Adikes, 422 F.Supp. 1144, 1146-47 (E.D.N.Y.1976); Dillon v. Berg, 326 F.Supp. 1214, 1230-31 (D.Del.), Aff'd, 453 F.2d 876 (3d Cir. 1971). There was no violation of 15 U.S.C. § 78m(d)(1) which requires the filings of a Schedule 13D Form by a person acquiring five percent of any class of registered security. See Kennecott Copper Corp. v. Curtiss-Wright Corp., 584 F.2d 1195, 1205-07 (2d Cir. 1978). There was adequate disclosure concerning the employment arrangements of key personnel. Nit-picking is not the name of the game. Id. at 1200.
 
 
 11
 Turning to the election itself, appellants contend that it should be set aside because the procedures followed by the Special Master did not fully conform with the requirements of the Florida Corporation Act. For example, section 607.094(2) of the Florida Corporation Act appears to require that a director receive the affirmative vote of a majority of the shares represented at a meeting and entitled to vote, while the Special Master's approved Plan permitted the election of the ten directors receiving the highest number of votes. The proper time for appellants to have voiced these objections was of course when the Special Master's Plan for the conduct of the election was presented to the district court for approval. See W. R. B. Corp. v. Geer, 313 F.2d 750, 752 (5th Cir. 1963). In any event, we find no merit in appellants' contention. Having undertaken the unusual task of providing proper management for ICC through the appointment of an interim board of directors, the district court was authorized, indeed required, to see that the corporation was returned in orderly fashion to private control. The Plan submitted by the Special Master, largely unobjected to by appellants, was a sound one. The district court did not err in adopting it.
 
 
 12
 Finally, appellants contend that the district court erred in upholding the ruling of the Special Master which refused to permit proxies cast for three members of the so-called "Fein Slate" to be voted at the last minute in favor of three members of appellants' slate. In support of this maneuver, the three Fein candidates had withdrawn their names from consideration as candidates.
 
 
 13
 The proxies in question permitted substitution of candidates only if a nominee became "unavailable". The Special Master had informed Fein prior to the election that the word "unavailable" covered only the situation where there was an unforeseen good faith withdrawal, and would not permit orchestrated withdrawals to facilitate consolidation of competing slates. Despite this warning, Mr. Fein did not secure any proxies giving him broader substitutional authority. We agree with the district court that the Special Master's ruling was correct. Indeed, we are at a loss to understand why appellants pursue their objection. Even if the votes in question had been credited to the three candidates on appellant's slate, none of them would have had sufficient votes in the aggregate to overtake any of the elected nominees.
 
 
 14
 The orders appealed from are affirmed with costs to defendants-appellees.
 
 IRVING R. KAUFMAN, Chief Judge:
 
 15
 I concur in the result.