Phillip ISSEN, on behalf of himself and all others similarly situated, and Derivatively on behalf of GSC Enterprises, Inc., Plaintiffs,

v.

GSC ENTERPRISES, INC., The Bank of Lincolnwood, Steinway Drug Company, Ford Hopkins Company, Richard Goodman, Samuel Bergman, Egmont Saunderling, Walter Goodman, Erwin Horwitz, Mason Loundy, Raymond Eiden, Edward Gorenstein, Marshall D. Lieb and Haig Pedian, Defendants.

Seymour ABRAMS, individually and on behalf of himself and all other persons similarly situated, and Derivatively on behalf of GSC Enterprises, Inc. and the shareholders thereof, Plaintiffs,

v.

GSC ENTERPRISES, INC., a corporation, The Bank of Lincolnwood, a corporation, Miller, Cooper & Company, a partnership, Richard Goodman, Walter Goodman, Samuel Bergman, Egmont Saunderling, Erwin Horwitz, Mason Loundy, Raymond Eiden, Edward Gorenstein, Marshall D. Lieb, Haig Pedian, Clyde Wm. Engle, Roger L. Weston, Sierra Capital Group, a limited partnership, the Trustees of the Janice L. Engle Children's Trust, Michael D. Coughlin, William N. Weaver, Jr., and Ronald K. Zuckerman, Defendants.

Nos. 74 C 0346 and 74 C 2215.

United States District Court,
N. D. Illinois, E. D.

Jan. 26, 1981.

Pressman & Hartunian, Chicago, Ill., for plaintiffs.

Harry Young, Bilantic, Neistein, Richman, Hauslinger & Young, Ltd., Charles Pressman, Pressman & Hartunian, Chicago, Ill., for plaintiffs.

Margaret Mazwell, Hubachek, Kelly, Rauch & Kirby, Richard Goodman, pro se, John T. Coleman, Norman J. Barry, Baker & McKenzie, Peterson, Ross, Rall, Barber & Seidel, Jerome Torshen, Torshen, Fortes & Eiger, L.E. Sachnoff, Joel Feldman, Jack L. Block, William N. Weaver, Sachnoff, Schrager, Jones & Weaver, Stephen M. Merrick, Fishman, Merrick & Perlman, Edward A. Gorenstein, Lieb, Pedian, Eiden & Gorenstein, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

These cases have a long and complicated history dating back almost seven years

since the filing of the original complaints. Presently before the Court is the motion of certain defendants[1] to dismiss an amendment to plaintiff Abrams' complaint charging them with various violations of the federal securities laws in connection with a "going private" merger accomplished by GSC Enterprises, Inc., in October, 1977, on the ground that the allegations of the complaint as amended fail to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The defendants also oppose Abrams' motions for a preliminary injunction and for class certification of the additional counts challenging the 1977 merger as well as the count seeking to challenge the merger derivatively on behalf of GSC. Since the resolution of the motion to dismiss will dispose of a large portion of this case, it will be considered first in this opinion.

## BACKGROUND

The original complaints in this consolidated action were filed in 1974 by Phillip Issen (No. 74 C 0346) and Seymour Abrams (No. 74 C 2215) against GSC Enterprises, Inc. ("GSC"), a Delaware corporation, Miller, Cooper & Co., certified public accountants for GSC, and various individual directors and major stockholders of GSC and its subsidiaries: The Bank of Lincolnwood, Steinway Drug Co., and Ford Hopkins Drug Co. The plaintiffs sought declaratory, injunctive, and monetary relief individually and as representatives of a large class of GSC shareholders or, in the alternative, derivatively on behalf of GSC, for alleged violations of sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a), and Rules 10b–5 and 14a–9 promulgated by the Securities and Exchange Commission.[2] The complaints

---

1. The defendants involved in this portion of the case are: GSC Enterprises, Inc., the Bank of Lincolnwood, Walter Goodman, Raymond Eiden, Marshall D. Lieb, Haig Pedian, Clyde Wm. Engle, Roger L. Weston, Sierra Capital Group, Michael D. Coughlin, William N. Weaver, Ron-

ald K. Zuckerman, and the Trustees of the Engle Children's Trust.

2. The original complaints filed in 1974 allege that the defendants entered into a conspiracy, the existence of which they failed to disclose to the plaintiffs, whereby they caused the Bank of

also asserted various pendent state causes of action for breach of fiduciary duty. Jurisdiction was grounded in section 27 of the Securities and Exchange Act, 15 U.S.C. § 78aa, 28 U.S.C. § 1331, and upon principles of pendent jurisdiction over the state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The only motion pending at present with regard to the original complaints is plaintiffs' consolidated motion for class certification, which is not addressed in this opinion.

After the original complaints were filed, the management and major shareholders of GSC changed. This new group, the "Engle group," proceeded to acquire approximately 55% of the outstanding shares of GSC through open market and private purchases and in October, 1977, caused a merger between GSC and Lincolnwood Bankcorporation, Inc. ("LBI"), also a Delaware corporation. LBI was wholly owned by the majority shareholders of GSC, who transferred their GSC shares to LBI in exchange for all of LBI's stock, and was incorporated solely for the purpose of enabling GSC to undertake a "going private" merger pursuant to sections 228 and 251 of the Delaware Corporation Code.[3] As a result of the merger, the Engle group became the sole owners of GSC, the surviving corporation, and the approximately 6,000 minority shareholders representing 45% of the outstanding stock of GSC were "frozen out" of GSC. Shareholders with less than 435 GSC shares were entitled to receive $1.15 per share in cash for their shares and the other minority shareholders were entitled to $500 12-year 8½% capital notes of the Lincolnwood Bank, a wholly-owned subsidiary of GSC. The merger agreement was signed on October 19, 1977, and it became effective on October 24, 1977. The minority shareholders were notified within ten days of the effective date as required by Delaware law.

Following the merger, plaintiff Abrams amended his complaint, adding Counts IV through X charging the new management and controlling shareholders of GSC with violations of sections 10(b), 13(d), and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78m(d), 78n(a), and various breaches of fiduciary duty under state law in connection with the merger. Abrams has not yet tendered his GSC shares pursuant to the terms of the merger and, as far as the record indicates, has not sought his appraisal remedy in the Delaware courts.[4]

Lincolnwood, a wholly-owned subsidiary of GSC, to make loans to certain of the defendants without adequate collateral and at unreasonably low interest rates in situations in which the likelihood of repayment and the solvency of the borrowing defendant was doubtful which loans were allegedly not disclosed in proxy statements, annual reports, or filings required by the Securities and Exchange Commission. Plaintiffs further allege that the defendants failed to disclose the true financial condition of GSC's drug company subsidiaries and failed to disclose that they caused GSC to sell these subsidiaries at less than fair market value. The defendants also allegedly failed to disclose that they caused GSC to pay inflated insurance premiums to an insurance agency controlled by a director of GSC, and that they caused GSC to pay rent in excess of fair market value for the premises housing the Lincolnwood Bank, which premises were partially owned by a director of GSC. Plaintiffs allege that Miller, Cooper and Company participated in the nondisclosure of the loans and other insider transactions.

3. Section 228 of the Delaware General Corporation Law, Del.Code Ann. tit. 8, § 228, pro-

vides in pertinent part that any action that could be taken at a meeting of all the shareholders of a corporation can be taken without a meeting, without prior notice, and without a vote, if written consent is obtained from stockholders having not less than the minimum number of votes that would be needed to take the desired action at the meeting. Section 251 of the Delaware General Corporation Law, Del. Code Ann., tit. 8, § 251, which governs the merger of two Delaware corporations, provides that such a merger may be consummated by the approval of the stockholders holding a majority of the outstanding shares of both corporations. LBI, as the owner of approximately 55% of the outstanding shares of GSC, approved the merger as did a majority of the stockholders of LBI.

4. Phillip Issen, the plaintiff in No. 74 C 0346, has joined with another GSC shareholder, Maurice Settler, in a state court action in Delaware seeking appraisal. That action has been stayed pending the disposition of the case at bar. *See* Issen v. GSC Enterprises, Inc., Civil Action No. 5452 (Del.Ch. Newcastle County, Nov. 22, 1977).

His motion for a temporary restraining order to delay the implementation of the merger was denied by Judge Flaum on November 7, 1977.

### The Amendment to the Complaint

In the amendment to his complaint, Abrams charges the defendants with failing to disclose certain material facts in the merger notice and other documents sent to the shareholders immediately following the merger as required by Delaware law. Briefly summarized, Abrams' allegations of nondisclosure are as follows:

1) The defendants failed to disclose certain insider agreements pursuant to which defendant Engle, chairman of the board and president of GSC, allegedly agreed to purchase (15 months after the merger) the GSC shares owned by the defendants Lieb, Pedian, and Eiden for $2.52 per share in cash and the GSC shares held by Eiden's children for $1.96 per share in cash while only paying $1.15 per share to GSC's minority shareholders at the time of the merger. [Amended Complaint, ¶ 15(a)].

2) The defendants failed to disclose in GSC's financial statements the fair market value of GSC's one-half interest (through its wholly-owned subsidiary, Toulin, Inc.) in the Lincolnwood Bank building and adjacent land amounting to $1,045,750 or approximately 25 cents per GSC share. [Amended Complaint, ¶ 15(b), (c)].

3) The defendants failed to disclose that there was no market for the 8½% 12-year capital notes of the Lincolnwood Bank given to the minority shareholders in exchange for their GSC shares under the terms of the merger and that if the notes had to be sold at a discount, they were not the equivalent of cash as the merger notice stated. [Amended Complaint, ¶ 15(d)–(f)].

4) The defendants failed to disclose that they had been discussing "going private" for at least two years prior to the merger and that the GSC board had commissioned a study in 1976 on the feasibility of delisting GSC's stock, which had been listed on the Amex, and had hired an appraiser in 1977. [Amended Complaint, ¶ 15(g), (j), (k)].

5) The defendants failed to disclose that GSC could have paid a dividend prior to the merger, but that defendants deliberately chose not to do so in order to depress the market price of GSC stock on the date of the merger. [Amended Complaint, ¶ 15(h)].

6) The defendants failed to disclose that defendant Engle was in default of a $500,000 payment due to Walter Goodman in February, 1977, in connection with Engle's purchase of Goodman's 800,000 GSC shares. [Amended Complaint, ¶ 15(*l*)].

7) The defendants failed to disclose that the stock pledged by Engle to GSC as collateral for a $700,000 loan (the proceeds of which were used by Engle to satisfy his indebtedness to Goodman who had been a major stockholder in GSC before the control of the company changed hands) had been earlier pledged to a Chicago bank as security for another $700,000 loan, so that the GSC loan to Engle was actually unsecured. [Amended Complaint, ¶ 15(m)].

8) The defendants failed to disclose that Engle had not paid the interest when due on two previous loans of $600,000 and $35,000 from GSC. [Amended Complaint, ¶ 15(n)].

9) The defendants failed to disclose that the GSC board of directors felt that GSC's purchase of 126,200 of its own shares for $1.25 per share on the open market in the months preceding the merger was favorable to GSC even though GSC's assets were allegedly worth less at the time of these open market purchases than at the time of the merger. [Amended Complaint, ¶ 15(o)].

10) The defendants failed to disclose their conflict of interest in determining the price to be paid for the minority shares since the value of their GSC stock would be reduced by the amount paid to the minority for their shares. [Amended Complaint, ¶ 15(p)].

11) The defendants failed to disclose the existence of a conspiracy, scheme, and device to defraud the minority shareholders and enable the Engle group to gain or perpetuate its control over GSC and force out minority shareholders by:

a) causing GSC to make open market purchases of 126,200 shares of GSC stock from minority shareholders in order to increase the stock percentage owned by the Engle group;

b) causing GSC to borrow $600,000 for the sole purpose of loaning it to Engle to enable him to satisfy his indebtedness to Walter Goodman under a contract by which Engle purchased Goodman's GSC stock;

c) causing GSC to omit the payment of dividends that could have been paid in order to suppress the price of GSC stock;

d) causing a merger in order to force out GSC's minority shareholders. [Amended Complaint, ¶ 15(i)].

Abrams charges that by their nondisclosures the defendants violated section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder. Furthermore, by characterizing the merger notice as a proxy solicitation, Abrams charges the defendants with a violation of section 14(a) and Rule 14a–9 by reason of the alleged false and misleading statements and omissions contained in the merger notice. Abrams also asserts a violation of section 13(d)(1)(C) of the Exchange Act because the defendants allegedly failed to reveal their plans to merge GSC and "go private" or to make other major changes in the capital structures of GSC and its subsidiary, the Lincolnwood Bank, in certain SEC filings required under section 13(d). For purposes of the pending motion to dismiss, Abrams' factual allegations must be taken as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Mathers Fund, Inc. v. Colwell Corp.*, 564 F.2d 780 (7th Cir. 1977).

## THE MOTION TO DISMISS
### *Section 10(b) and Rule 10b–5*
#### I.

At the threshold of any action under section 10(b) or Rule 10b–5 lurks the question whether the alleged misrepresentations or omissions occurred "in connection with the purchase or sale of securities" as that phrase has been interpreted by the courts. In *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 464 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), Judge Augustus Hand established the principle, since adopted by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749, 95 S.Ct. 1917, 1931, 44 L.Ed.2d 539 (1975), that only a defrauded purchaser or seller of securities has standing to sue under Section 10(b) or Rule 10b–5. *Wright v. Heizer Corp.*, 560 F.2d 236, 246 (7th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978).

It appears to be settled that a minority shareholder forced to exchange his shares in a corporation pursuant to a merger or going private transaction is a "seller" within the meaning of the securities laws. In *Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir. 1967), the court reasoned that once a merger under Delaware law became effective, the minority shareholders' rights were frozen. Although *Vine* involved a short form merger pursuant to section 253 of the Delaware General Corporation Law, Del.Code.Ann. tit. 8, § 253(a), the considerations that guided that court are no less applicable to the merger under section 251, Del.Code.Ann. tit. 8, § 251, involved in the case at bar. "Since, in order to realize any value for his stock, appellant must exchange the shares for money from appellee, as a practical matter appellant must eventually become a party to a 'sale,' as that term has always been used." *Vine v. Beneficial Finance Co., supra*, 374 F.2d at 634. In *Vine* as in the case at bar, the stockholder had not yet actually tendered his shares at the time suit was brought. This Court agrees with the court of appeals in *Vine* that requiring an actual physical exchange in a case such as this would be a "needless

formality." *Id.* The principle that a merger involves a purchase or sale entitling a minority shareholder to the protections of the antifraud provisions of the securities laws has been endorsed by other courts in this and other circuits. *Dudley v. Southeastern Factor & Finance Corp.*, 446 F.2d 303, 306–07 (5th Cir.), *cert. denied,* 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971); *Dasho v. Susquehanna Corp.*, 380 F.2d 262, 266–67 (7th Cir. 1967), *cert. denied,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967); *Voege v. American Sumatra Tobacco Corp.*, 241 F.Supp. 369, 374 (D.Del.1965).[5]

The defendants in the instant case assert that even if Abrams is a purchaser or seller within the meaning of the *Birnbaum* rule, the alleged misrepresentations and omissions did not occur "in connection with the purchase or sale of securities" since they relate to the merger notice sent to shareholders *after* the effective date of the merger. Defendants argue that in order to be actionable under Rule 10b–5, the alleged fraud must occur *before* the consummation of a purchase or sale. However, the "in connection with" requirement should not be interpreted as imposing such a discrete time frame in order for fraud to be actionable under Rule 10b–5. It has been said that "specific dates of circumstances giving rise to or constituting fraud are not significant, so long as there is some temporal relationship between the events and the purchase

of stock." *Clinton Hudson & Sons v. Lehigh Valley Co-op Farms*, 73 F.R.D. 420, 425 (E.D.Pa.), *aff'd mem.* 586 F.2d 834 (3d Cir. 1977) (though the court held that there was no cause of action in this case because the alleged fraud occurred five years after purchase). Several cases have held that the "in connection with" requirement is satisfied when the fraud occurs after the technical formation but prior to the actual performance of a contract for the sale of securities. *Lewelling v. First California Co.*, 564 F.2d 1277, 1280 (9th Cir. 1977); *Lanning v. Serwold,* 474 F.2d 716, 718–19 (9th Cir. 1973). In the final analysis, satisfaction of the "in connection with" requirement depends not upon when an agreement was executed, but rather upon "whether an investment decision remains to be made by the party from whom disclosure is withheld. . . ." *Goodman v. Epstein,* 582 F.2d 388, 413 (7th Cir. 1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). *See also Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1049 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977). In the case at bar, Abrams had an important, albeit a final, investment decision to make upon receipt of the merger notice,[6] to wit: whether to tender his shares of GSC stock in exchange for the 8½% 12-year capital notes of the Lincolnwood Bank or bring an appropriate state court

---

5. A more relaxed standard has been applied to minority shareholders seeking injunctive relief from a proposed or imminent merger, or one that was recently consummated. Since Abrams also seeks injunctive relief, he would clearly have standing as a purchaser or seller under the relaxed standard. *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 194 (3d Cir. 1976); *Landy v. FDIC,* 486 F.2d 139, 156–57 (3d Cir. 1973); *Hundahl v. United Benefit Life Insurance Co.,* 465 F.Supp. 1349, 1358 (N.D.Tex. 1979).

6. This case is thus unlike *O'Brien v. Continental Illinois National Bank & Trust Co.*, 593 F.2d 54 (7th Cir. 1979), in which the United States Court of Appeals for the Seventh Circuit held that the nondisclosures there at issue were not in connection with the purchase or sale of securities since the plaintiffs in that case had no investment decision to make. Rather, the nondisclosures related to "whether plaintiffs

should terminate the trust or agency agreements or, perhaps, take some action against Continental." *Id.* at 60. In that case, the plaintiffs had delegated to Continental complete discretion to make securities investments on their behalf. When the plaintiffs discovered that Continental had made unwise or improper investments, their recourse was in state court for breach of fiduciary duty, not in federal court for violation of the securities laws. As Judge Flaum had held below, "there was no investment decision to be made by plaintiffs and no such investments were affected by any lack of information on plaintiffs' part. The 'market transactions' . . . were pure; the trust relationships allegedly were not. Rule 10b–5, however, protects the former and not the latter." *O'Brien v. Continental Illinois National Bank & Trust Co.*, 431 F.Supp. 292, 296–97 (N.D.Ill.1977), *affirmed,* 593 F.2d 54 (7th Cir. 1979).

action seeking appraisal or an injunction.[7] Therefore, having determined that the misrepresentations and nondisclosures alleged by Abrams in the amendment to his complaint occurred in connection with the purchase or sale of securities as that phrase has been interpreted by the courts, the inquiry shifts to the other elements of a violation of section 10(b) and Rule 10b–5.

## II.

■ The essential elements of a private cause of action under section 10(b) or Rule 10b–5 include:[8] a material misrepresentation, omission, deception, or manipulation, *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); scienter—an intent to deceive, manipulate, or defraud the plaintiff, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194–97, 96 S.Ct. 1375, 1381–83, 47 L.Ed.2d 668 (1976); and some causal connection between the alleged violation and the injury to the plaintiff, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Ordinarily, the plaintiff must show that he relied to his detriment upon the alleged misrepresentation, but when liability is premised upon an alleged omission or nondisclosure, reliance is presumed from a showing of materiality. *Affiliated Ute Citizens v. United States, supra.* The Supreme Court has articulated the standard for materiality as requiring "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). In other words, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.*

■ In the context of a going private merger, omitted or undisclosed information is deemed material if it has a bearing on the

---

**7.** Section 262 of the Delaware General Corporation Law, Del.Code.Ann., tit. 8, § 262, provides appraisal rights to minority shareholders who have been frozen out of a corporation by virtue of a merger or consolidation effected pursuant to Sections 228 or 253 of the Code, Del.Code.Ann., tit. 8, §§ 228, 253. Furthermore, in *Singer v. Magnavox Co.*, 380 A.2d 969, 980 (Del.Supr.1977), the Delaware Supreme Court held that a merger "made for the sole purpose of freezing out minority stockholders is an abuse of the corporate process" and a court may enjoin such a merger and order other appropriate relief upon the application of the minority stockholders. In subsequent cases, the Delaware Supreme Court has reiterated its intention to scrutinize the "entire fairness" of all aspects of a corporate merger upon application of the minority shareholders. *See Roland International Corp. v. Najjar*, 407 A.2d 1032, 1034 (Del.1979); *Tanzer v. International General Industries*, 379 A.2d 1121, 1124 (Del. Ch.1977). *See also Kemp v. Angel*, 381 A.2d 241 (Del.Ch.1977) (principle extended to short form mergers pursuant to Del.Code.Ann., tit. 8, § 253); Brudney and Chirelstein, *A Restatement of Corporate Freezeouts*, 87 Yale.L.J. 1354 (1978).

**8.** In supplemental memoranda filed pursuant to leave of Court, the parties have argued the existence of a private right of action under

section 10(b) in light of recent Supreme Court decisions limiting implied private rights of action. *Trans America Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Although defendants correctly point out that the Supreme Court has never expressly held that a private right of action should be implied under section 10(b), this Court is of the opinion that the Supreme Court's continued acquiescence in the implication of such a cause of action by the lower federal courts over the past 25 years is strong evidence of its implicit recognition that a private right of action exists. *See, e. g., Touche Ross & Co. v. Redington, supra*, 442 U.S. 560, 99 S.Ct. at 2490 n.19; *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. at 1955 n.13, 60 L.Ed.2d 560. Recently, the United States Court of Appeals for the District of Columbia Circuit reached the same conclusion in holding that an implied private right of action exists under section 10(b). *Wachovia Bank and Trust Co. v. National Student Marketing Corp.* (D.C.Cir. December 5, 1980), 49 U.S.L.W. 2409–10 (December 23, 1980). This Court is of a like opinion and so holds that a private right of action exists under section 10(b).

minority shareholder's decision whether to tender his shares pursuant to the majority's terms or bring an appropriate state court action seeking injunctive relief. Thus, the United States Court of Appeals for the Third Circuit recently held that "where a misrepresentation or omission of material information deprives a proper plaintiff minority shareholder of an opportunity . . . to enjoin a merger, there is a cause of action under Rule 10b–5." *Healey v. Catalyst Recovery of Pennsylvania, Inc.,* 616 F.2d 641, 647 (3d Cir. 1980). The court went on to say that "[u]nless there is a reasonable probability that a shareholder could have used the information to obtain an injunction, then the information would not be important to the decisionmaking process of a reasonable investor." *Id.* The court then remanded the case to the district court for a determination as to whether the plaintiff-minority shareholder in that case had been deprived of material information that he could have used to obtain a state court injunction and stop the merger. The United States Court of Appeals for the Seventh Circuit has also held that the failure to disclose to the minority shareholders certain facts indicating self-dealing on the part of a majority shareholder and director, even though the minority had no right to vote on the transaction in question, was a material omission or nondisclosure since the minority shareholders could have sought a state court injunction to block the transaction. The Seventh Circuit applies a similar standard as that articulated by the Third Circuit in *Healey. Wright v. Heizer Corp.,* 560 F.2d 236, 250 (7th Cir. 1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). *Cf. Kidwell ex rel. Penfold v. Meikle,* 597 F.2d 1273 (9th Cir. 1979); *Goldberg v. Meridor,* 567 F.2d 209 (2d Cir. 1977), *cert.*

*denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978).

The Supreme Court has held, however, that a minority shareholder may not bootstrap his way into federal court merely by alleging the majority's failure to disclose its violations of state law. In *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Supreme Court held that a complaint alleging the failure to disclose the unfairness of a particular transaction, corporate mismanagement, or breach of fiduciary duty in connection with a short form merger that squeezed out minority shareholders was insufficient to support a cause of action under section 10(b) or Rule 10b–5 without some affirmative showing of manipulation, deception, misrepresentation, or nondisclosure of material facts. A cause of action is stated "only if the conduct alleged can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." *Santa Fe Industries, Inc. v. Green, supra,* 430 U.S. at 473–74, 97 S.Ct. at 1300–01. Since the plaintiff in *Santa Fe* did not allege any material misrepresentation or nondisclosure in connection with the merger and failed to allege manipulation, which the Court defined as "a term of art" encompassing such devices as "wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity," *id.* at 476, 97 S.Ct. at 1302, the Court held that the complaint failed to state a cause of action. The failure to give minority shareholders prior notice of the merger was not held to be a material nondisclosure since, under Delaware law at that time, a minority shareholder could not enjoin the implementation of a short form merger. The shareholder's sole remedy was appraisal, the existence of which was unaffected by the lack of prior notice.[9] *Santa*

---

9. Ironically, shortly after the *Santa Fe* decision, the Delaware Supreme Court held that Delaware courts would enjoin a merger and examine the "entire fairness" of the transaction upon the application of a minority shareholder alleging that the sole purpose of the merger was to squeeze out the minority shareholders. *Singer v. Magnavox Co.,* 380 A.2d 969 (Del. Supr.1977). Delaware courts have held that a complaint making such an allegation "is now virtually immune to a motion to dismiss for failure to state a cause of action, especially

when the basis for such a motion [is] that the plaintiff is only complaining about the amount paid for the minority shares." *Najjar v. Roland International Corp.,* 387 A.2d 709, 713 (Del.Ch. 1978), *affirmed,* 407 A.2d 1032 (1979). Indeed, the Delaware Supreme Court has said that even when a parent corporation has a bona fide reason for merging with its subsidiary, the Delaware courts will examine the transaction upon the complaint of a minority shareholder to ensure that the minority is treated fairly. *Tanzer v. International General Industries, Inc.,* 379

*Fe Industries, Inc. v. Green, supra*, 430 U.S. at 474 n.14, 97 S.Ct. at 1301 n.14.

In Part IV of its opinion, the Court went on the state some "additional considerations that weigh heavily against permitting a cause of action under Rule 10b–5 for the breach of corporate fiduciary duty alleged in [the] complaint." *Id.* at 477, 97 S.Ct. at 1303. Although phrased as an alternative holding in which only five Justices concurred, ". . . where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537, 69 S.Ct. 1235, 1236, 93 L.Ed. 1524 (1949); *O'Brien v. Continental Illinois National Bank & Trust Co.*, 593 F.2d 54, 59 n.6 (7th Cir. 1979). The Court said that a private cause of action should not be implied under section 10(b) where it is "unnecessary to ensure the fulfillment of Congress' purposes in adopting the Act." *Santa Fe Industries, Inc. v. Green, supra*, 430 U.S. at 477, 97 S.Ct. at 1303, citing *Piper v. Chris-Craft Industries*, 430 U.S. 1, 41, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *J. I. Case v. Borak*, 377 U.S. 426, 431–33, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). The purpose of section 10(b), said the Court, was to ensure full and fair disclosure to investors in securities. "[O]nce full and fair disclosure has occurred, the fairness of the terms of the transaction is at most a tangential concern of the statute." *Santa Fe Industries, Inc. v. Green, supra*, 430 U.S. at 478, 97 S.Ct. at 1303. Furthermore, the Court noted that it was reluctant to recognize a federal cause of action in an area so intertwined with the law of fiduciary duty that had traditionally been relegated to state court. Since Delaware recognized a cause of action by which minority shareholders could seek appraisal and recover the fair value of the allegedly undervalued shares, the Court reasoned that it was unnecessary to imply a 10b–5 cause of action that would afford essentially the same relief as that available in state court. "The result would be to bring within the Rule a wide variety of corporate conduct traditionally left to state regulation

. . . [t]his extension of the federal securities laws would overlap and quite possibly interfere with state corporate law." *Id.* at 479, 97 S.Ct. at 1304.

The Court's alternative ground for refusing to find a 10b–5 cause of action in *Santa Fe*, however, is limited to the facts of that case in which there had been no material deception, misrepresentation, manipulation, or nondisclosure alleged and thus no interruption in the flow of information to the shareholder implicating the federal interest in full and fair disclosure. *See Healey v. Catalyst Recovery of Pennsylvania, Inc.*, 616 F.2d 641, 646 (3d Cir. 1980). Thus, the extent to which the policies articulated in Part IV of the *Santa Fe* opinion might apply even in the context of allegations of material misrepresentation or nondisclosure has never been decided by the Supreme Court. *But see Healey v. Catalyst Recovery of Pennsylvania, Inc., supra*, 616 F.2d at 651–61 (Aldisert, J., dissenting). Lower courts, however, faced with the task of applying *Santa Fe* have tended to parse through a shareholder's complaint, discarding those allegations alleging no more than failure to disclose unfairness, corporate mismanagement, or breach of fiduciary duty and retaining those allegations that implicate the federal interest in ensuring full and fair disclosure of objective information so that a shareholder can make an informed investment decision. *See, e. g., Merritt v. Colonial Foods, Inc.*, 499 F.Supp. 910 (D.Del. 1980); *Hundahl v. United Benefit Life Insurance Co.*, 465 F.Supp. 1349 (N.D.Tex. 1979).

In the wake of the *Santa Fe* decision, lower federal courts have had ample opportunity to determine what constitutes a material deception, misrepresentation, or nondisclosure actionable under the statute. As the court said in *Goldberger v. Baker*, 442 F.Supp. 659, 664 (S.D.N.Y.1977), "[n]ow that it is clear that Rule 10b–5 does not reach breaches of fiduciary duties without some deception or misrepresentation by the

---

A.2d 1121 (Del.Ch.1977). The minority shareholders in *Singer, Tanzer,* and *Roland*—like Abrams in the case at bar—charged that they were being squeezed out of a corporation upon terms that were grossly inadequate and unfair. *See also* note 7 *supra.*

controlling shareholder, the question remains as to what constitutes an actionable deception." In that case, the court held that allegations that the defendants failed to disclose that certain loans were made to insiders for less than adequate consideration and that certain transactions damaged the corporation did not state a claim under section 10(b). As long as minority shareholders are not misled about the actual terms of a transaction, it is not deceptive for corporate insiders to fail to characterize the transaction or their own role with pejorative nouns or adjectives or fail to draw adverse inferences from the facts disclosed. A reasonable shareholder may be required to draw his or her own inferences, whether they may be positive or negative in the circumstances of a particular case. *Goldberg v. Meridor*, 567 F.2d 209, 218 n.8 (2d Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978); *Biesenbach v. Guenther*, 588 F.2d 400 (3d Cir. 1978); *Golub v. PPD Corp.*, 576 F.2d 759, 765 (8th Cir. 1978); *Merritt v. Colonial Foods, Inc.*, 499 F.Supp. 910 (D.Del.1980); *Klamberg v. Roth*, 473 F.Supp. 544 (S.D.N.Y.1979); *Hundahl v. United Benefit Life Insurance Co.*, 465 F.Supp. 1349 (N.D.Tex. 1979). "When the nature and scope of a transaction are clear, it is not necessary for the corporate instigators to characterize the various effects of the transaction as favorable or unfavorable or to evaluate its overall effect; such characterization is a matter of judgment, not fact." *Alabama Farm Bureau Mutual Casualty Co., Inc. v. American Fidelity Life Insurance Co.*, 606 F.2d 602, 611 (5th Cir. 1979), *cert. denied*, —— U.S. ——, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980).

Similarly, many courts have held that allegations of corporate mismanagement, waste, or breach of fiduciary duty fail to state a claim under section 10(b) or Rule 10b–5 after *Santa Fe*. *Rodman v. Grant Foundation*, 608 F.2d 64, 71–73 (2d Cir. 1979); *Biesenbach v. Guenther, supra*, 588 F.2d at 402; *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 562 F.2d 1040, 1048 (8th Cir. 1977); *Tyco Laboratories, Inc. v. Kimball*, 444 F.Supp. 292 (E.D.Pa.1977). As the court said in

*Hundahl v. United Benefit Life Insurance Co., supra*, 465 F.Supp. at 1365:

> From *Santa Fe* must come the notion that where as here the central thrust of a claim or series of claims arises from acts of corporate mismanagement, the claims are not cognizable under federal law. To hold otherwise would be to eviscerate the obvious purpose of the *Santa Fe* decision, and to permit evasion of that decision by artful legal draftsmanship. The plaintiffs here have, with undeniable skill, woven a complex series of acts of mismanagement into a fabric that appears to reflect a scheme of corporate deception. Yet the fabric is nonetheless woven from the thread of corporate mismanagement. For that reason, this court is constrained to follow the flow of recent Supreme Court decisions in the area of securities regulation and to resolve this difficult legal question in favor of the defendants.

The court then dismissed all the plaintiff's claims for failure to state a claim upon which relief could be granted, except one alleging that the defendants had deceptively attributed a restriction on the payment of dividends to a ruling of a Nebraska state insurance agency.

It is with these principles in mind that this Court now proceeds to an analysis of the allegations contained in the amendment to Abram's complaint charging a wide range of fraudulent activity.

### III.

The allegations in Abrams' amendment to his complaint fall into two categories: those seeking to impose liability on the defendants for failure to characterize their actions in a negative way or make adverse inferences regarding the transactions in question, and those asserting affirmative misrepresentations or nondisclosures of facts in connection with the merger. Viewed in the light most favorable to the plaintiff, as it is filtered through *Santa Fe* and its progeny, it is clear that the allegations that fall into the first category, paragraphs 3 through 11 set forth in the summary of allegations at pp. 1284–1285 of this opinion, *supra*, fail

to state a claim upon which relief can be granted. However, this Court is of the opinion that the two allegations that fall into the second category, paragraphs 1 and 2, *supra,* adequately state a claim at this stage of the proceedings.

The defendants' alleged failure to disclose their "conflict of interest" in setting the price to be paid for the minority shares when the value of the majority shares would be adversely affected the higher the price tag placed on the minority shares (paragraph 10) and the alleged failure to disclose the existence of a "scheme, conspiracy, and device to defraud minority shareholders and enable the Engle group to gain or perpetuate control over GSC" (paragraph 11) do not rise to the level of violations of federal law by virtue of the defendants' failure to so characterize their activities in preparation for the going private merger. As the court noted in *Goldberg v. Meridor,* 567 F.2d 209, 218 n.8 (2d Cir. 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978), neither "section 10(b) or Rule 10b–5 requires insiders to characterize conflict of interest transactions with pejorative nouns or adjectives." *See also Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1084 (2d Cir. 1977). Furthermore, the acts in furtherance of the supposed conspiracy—open market purchases of 126,200 shares of GSC at $1.25 per share prior to the merger (paragraph 9),[10] the omitted payment of dividends (paragraph 5), the GSC loans to Engle (paragraphs 6, 7, and 8), and the merger itself—were all disclosed in GSC's financial statements and were matters of public record at the time the merger took place. Such allegations, involving the defendants' refusal to characterize the motives behind their actions, have not been viewed sympathetically by the courts. As one court said, "[t]he securities laws, while their central insistence is . . . upon disclosure, were never intended to attempt any such measures of psychoanalysis or reported self-analysis. The unclean heart of a director is not actionable, whether or not it is 'disclosed,' unless the impurities are translated into actionable deeds or omissions both objective and external." *Stedman v. Storer,* 308 F.Supp. 881, 887 (S.D.N.Y.1969), cited in *Biesenbach v. Guenther,* 588 F.2d 400, 402 (3d Cir. 1978). Moreover, other courts have held that the failure to disclose that corporate insiders authorized securities transactions as part of an undisclosed "scheme" to maintain their control over the corporation is not actionable under section 10(b). *Biesenbach v. Guenther, supra; Merritt v. Colonial Foods, Inc.,* 499 F.Supp. 910 at 914 (D.Del.1980); *Tyco Laboratories, Inc. v. Kimball,* 444 F.Supp. 292, 298 (E.D.Pa.1977).

10. It is particularly difficult to see how the failure to characterize the open market purchases of 126,200 shares at $1.25 a share prior to the merger as "favorable to GSC" would amount to a material nondisclosure actionable under the securities laws. Since no liability normally attaches when a corporate insider acts in the corporation's best interest, it is hard to see how the insider's failure to say he is acting in the best interest of a corporation would become actionable. Abrams argues rather circuitously that the information would have been significant to a reasonable investor because if the $1.25 figure was favorable to GSC at a time when its assets were supposedly worth less than at the time of the merger (an assertion that Abrams does not substantiate), then surely a figure greater than $1.25 would have been favorable to GSC when the merger subsequently became effective. Hence, the nondisclosure has a direct bearing on the fairness of the price at which the minority was frozen out of GSC. Since a reasonable shareholder could assume that the $1.25 price paid prior to the merger was favorable to GSC, the failure to make such a disclosure would not affect Abrams' investment decision or the success of a potential state court action for injunctive relief.

In paragraph 17 of the amendment to his complaint, Abrams also alleges that in GSC's 1976 Annual Report, the defendants falsely stated that the purpose behind the open market purchases was to provide GSC "with additional future corporate flexibility without further diluting stockholders' equity through new stock issuances" when, in fact, the true purpose of the purchases was to enable the majority shareholders to acquire more than 50% of the GSC stock and to cause the merger to squeeze out the minority. It is axiomatic that when a company retires a portion of its outstanding stock, those shareholders with large blocks of stock stand to benefit since their proportions of ownership and control will increase. *See Merritt v. Colonial Foods, Inc.,* 499 F.Supp. 910 at 914 (D.Del.1980). Failure to state the obvious does not result in liability.

In the same vein, the allegations with respect to the loans by GSC to Clyde Wm. Engle (paragraphs 6, 7, 8) charge no more than, at most, corporate mismanagement or breach of fiduciary duty. The GSC loans to Engle were disclosed in the merger notice and accompanying documents. The notice also disclosed that Engle used the proceeds to satisfy his indebtedness to Walter Goodman, who earlier had sold a large block of GSC stock to Engle, and that the same collateral secured more than one loan. That these loans enabled Engle to perpetuate his control of GSC is readily inferable from the facts disclosed and, as previously discussed, the failure to disclose a "scheme" to maintain such control is not actionable under the federal securities laws if the underlying facts and circumstances are adequately disclosed.

The alleged failure to disclose that there was no market for the 8½% 12-year capital rates of the Lincolnwood Bank, and that they were therefore not essentially equivalent to cash (paragraph 3) also fails to state a federal cause of action. The defendants and their two appraisers apparently were of the opinion that the notes were a fair exchange for the minority shares.[11] The defendants were not obligated, as Abrams seems to believe, to pay the minority in cash for their shares, and they were not obligated "to say that their deal was a bad one," if in fact it was, as long as all the terms of the transaction were disclosed. *Goldberger v. Baker*, 442 F.Supp. 659, 665 (S.D.N.Y.1977). They were merely required to describe the terms of the deal they were offering and relay the opinions of their appraisers, without any gloss or characterization one way or another. *Helfant v. Louisiana & Southern Life Insurance Co.*, 459 F.Supp. 720, 724 (E.D.N.Y.1978). The defendants did this, and no liability may attach for their failure to cast the terms of the merger in negative terms by speculating as to the future marketability of the capital notes. Such speculation or prediction may be so inherently misleading and

inaccurate that courts dealing with disclosure requirements in other contexts have been reluctant to mandate disclosure beyond the essential facts of a transaction necessary to enable an investor to make an informed investment decision. *See Freeman v. Decio*, 584 F.2d 186, 199–200 (7th Cir. 1978) (alleged nondisclosure of material inside information in section 10(b) case); *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1292–93 (2d Cir. 1973) (misleading statements in proxy in section 14(a) case); *Susquehanna Corp. v. Pan American Sulphur Co.*, 423 F.2d 1075, 1086 (5th Cir. 1970) (alleged nondisclosure in section 13(d) case).

Finally, the defendants were not required to disclose that they had been discussing going private for two years prior to actually agreeing on the move (paragraph 4). The fact that the defendants had been discussing going private for two years was not material to and would have had no effect upon Abrams' investment decision whether to tender his shares or seek an injunction once the merger had occurred. Even under the liberal Delaware standards, the fact that the director had been discussing going private for two years or more could not have formed the basis for a successful state court suit, since under Delaware law, the majority shareholders or directors are under no obligation to give the minority notice of a merger upon which they will not be required to vote. Thus, the information was not material under the standard applied in this circuit. *See Wright v. Heizer Corp.*, 560 F.2d 236 (7th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978).

In short, this Court is troubled by just two of the many alleged nondisclosures asserted by Abrams: that the defendants failed to disclose certain insider agreements whereby Engle was obligated to purchase GSC stock held by other defendants 15 months after the merger took place for more than the $1.15 per share offered to the

---

11. The defendants have attached to their reply memorandum supporting the motion to dismiss the affidavit of one of the two appraisers whose opinions were a part of the merger notice. The affidavit states that the appraiser was and is of the opinion that the 8½% interest

minority shareholders (paragraph 1)[12] and that the defendants did not disclose GSC's one-half interest (through Toulin, Inc., a wholly-owned subsidiary of the Lincolnwood Bank) in the Lincolnwood Bank building and adjacent land to which the defendants supposedly attached a fair market value of approximately $1,045,750 or about 25 cents per share (paragraph 2). The financial statements of the Bank and GSC do disclose their relationship with Toulin, Inc. and Toulin's one-half interest in the bank premises; however, Toulin's holdings are valued at historical cost less depreciation. The dispute is thus basically over the value of that one-half interest to GSC and the proper form of disclosure of asset value in a going private transaction such as in the instant case. Unlike the other allegations in the complaint, these two do not involve the failure to characterize the defendants' actions or motives in pejorative terms. Rather, they charge the defendants with the omission or nondisclosure of facts that Abrams alleges are material because of their bearing on his investment decision whether to tender his shares pursuant to the announced term of the merger or seek appraisal in state court.

At this stage of the proceedings, it cannot be said that the existence of the insider agreements and the actual value of the holdings of Toulin, Inc. would not have been material to Abrams' investment decision whether to tender his shares to the majority shareholders or bring an appropriate state court action to enjoin the merger under the liberal standard announced by the Delaware Supreme Court in *Singer v. Magnavox Co.*, 380 A.2d 969 (Del.Supr. 1977), just one month prior to the effective date of the merger in the instant case. Since the bulk of Abrams' other allegations do not really bear on whether the sole purpose of the merger is to squeeze out the minority at an unfair price, the knowledge of the insider agreements, and the actual value of Toulin's holdings may have "significantly altered the 'total mix' of information made available." *TSC Industries, Inc. v. Northway, Inc., supra*, 426 U.S. at 449, 96 S.Ct. at 2132. If Abrams' allegations are true, the information withheld may well have contributed to the success of a state court suit for injunctive relief after *Singer*. Thus, the nondisclosures would be material for purposes of the federal securities laws. *Wright v. Heizer Corp.*, 560 F.2d 236, 250 (7th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). Since Abrams was allegedly deprived of material information bearing on his investment decision in connection with a securities transaction, this Court holds that he has, in these two limited instances, stated a claim under section 10(b) and Rule 10b–5 sufficient to withstand a motion to dismiss.[13] The other allegations, however, are dismissed for failure to state a claim upon which relief may be granted. It is so ordered.

### Section 14(a) and Rule 14a–9

▪ Abrams also alleges that the merger notice constituted a "proxy or consent or

---

rate on the capital notes was intended to make them equivalent to cash.

12. Presumably, these alleged insider agreements were in existence at the time the merger occurred.

13. It may be, of course, that these allegations were in fact untrue and/or irrelevant to the success of a state court action. The defendants assert in their brief that the value of Toulin's holdings was disclosed but that Abrams is simply unable to understand the accounting principles under which disclosure was made. While it is true that by historical convention, assets such as land, buildings, equipment, etc., are normally listed at historical cost minus depreciation or depletion, *see* L. Rappaport, SEC Accounting Practice and Procedure 3.24–3.32 (3d Ed. 1972), that practice has been criticized as unduly misleading in situations such as going private transactions in which the current actual value of a company assumes great importance to the minority shareholders. *See* A. Bromberg, Securities Law: Fraud § 6.5 (1977 Supp.). Abrams should at least have the opportunity to show why the historical costing practice might be inappropriate in the case at bar. It may also turn out that the insider agreements for sales 15 months after the merger have no bearing on the price GSC offered to pay Abrams at the time of the merger or the existence of any plan to squeeze out the minority shareholders. Such speculation, however, is inappropriate on a motion to dismiss and is more properly addressed after fuller argument and briefing by the parties.

authorization" within the meaning of section 14 of the Securities and Exchange Act of 1934 and that the alleged material misrepresentations and omissions contained in the notice violated section 14 and Rule 14a–9. The only case cited by Abrams in support of this theory is *Sargent v. Genesco, Inc.*, 492 F.2d 750, 767 (5th Cir. 1974), in which the court held that a letter sent to debenture holders and common shareholders was a "communication to security holders under circumstances reasonably calculated to result in the procurement . . . of a failure to object or to dissent" to a refinancing plan instituted by the defendants, and as such constituted the solicitation of a proxy within the meaning of Rule 14a–1, 17 C.F.R. 240.14a–1. In *Sargent*, however, unlike the case at bar, the shareholders had a right to vote their approval or disapproval of the refinancing plan and thus their failure to object or dissent took on real significance within the primary purpose of section 14(a) of ensuring equal access to information having a tendency to affect the right of corporate suffrage. It was in this context that the court found that the mailing was intended to lull the shareholders into a false sense of security and "forestall the common shareholders from interposing obstacles in the path of the refinancing plan through the exercise of their rights as shareholders." *Sargent v. Genesco, Inc.*, 492 F.2d at 767. The court went on to say that:

> At the time of its mailing, the September 14 annual meeting required by express provision of Leeds' by-laws had not been held and was not in fact held until sometime in 1969, after the plan had gone into effect. To rely exclusively upon the informational tone of the letter itself, ignoring the circumstances surrounding its transmittal . . . would be to ignore our duty to interpret the securities laws according to their remedial purposes. . . .

*Id.*

The United States Court of Appeals for the Seventh Circuit has held that not every communication from management to the shareholders should be characterized as a proxy solicitation. *Brown v. Chicago, Rock Island & Pacific Railroad Co.*, 328 F.2d 122 (7th Cir. 1964). *See also Malhas v. Shinn*, 597 F.2d 28 (2d Cir. 1979) (corporation's annual report not a proxy solicitation). It has generally been assumed that section 14 was not intended by Congress to subject every informational communication by management to shareholders to stringent scrutiny. Rather, section 14 was intended to ensure that shareholders exercising the basic right of corporate suffrage in connection with some corporate transaction in which a vote is called for would be given all the facts they needed in order to make an informed choice. *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

In the instant case, the merger notice was an informational communication that was legally required to be sent to minority shareholders under Delaware law following a merger which did not require the assent of such shareholders. It was not intended to forestall the exercise of the minority shareholders' rights; rather, its purpose was to inform them of their right to cash in their shares or challenge the transaction in an appropriate court. It is difficult to see how such a communication, under these circumstances, could be deemed a proxy as that term is generally used and understood. To hold otherwise would be to subject virtually every communication from a corporation to its shareholders to the standards of disclosure mandated by section 14(a) on the ground that an omission or misstatement might result in a shareholder's failure to object or dissent to corporate action. Accordingly, Abrams' claims for violation of section 14 and Rule 14a–9 in Count V of the amendment to his complaint are dismissed for failure to state a claim upon which relief may be granted. It is so ordered.

### Section 13(d)(1)(C)

Abrams' final allegation under the federal securities laws is contained in one paragraph of Count VI of the amendment to his complaint, as follows:

> 32. The defendants in filings under Section 13(d)(1)(C) of the 1934 Act made wrongful and false statements because

they did not reveal plans or proposals which they had to merge GSC or to make other major changes in the capital structures of GSC and the Bank.

■ These bare allegations are insufficient to state a cause of action even under the liberal notice pleading criteria of the federal rules. Rule 9(b) requires that "the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). Abrams does not identify the particular filings that are alleged to be deficient under section 13(d)(1)(C), nor does he set forth the particular statements alleged to be wrongful or false. He does not even allege that at the time the filings were supposedly made, the defendants had decided to cause the merger and were thus under an obligation to disclose their plans. As noted earlier in this opinion the defendants are not required to make "predictions of future behavior, however tentatively phrased, which may cause ... the public investor to rely on them unjustifiably." *Susquehanna Corp. v. Pan American Sulphur Co.*, 423 F.2d 1075, 1086 (5th Cir. 1970). Accordingly, Count VI of the amended complaint, as presently constituted, fails to state a claim upon which relief may be granted.

■ Furthermore, although a private right to injunctive relief may exist by implication in favor of injured individual investors under section 13(d), *see Gateway Industries, Inc. v. Agency Rent A Car, Inc.*, 495 F.Supp. 92, 100 n.13 (N.D.Ill.1980), a question we need not now decide, it is clear that section 18(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78r(a), provides the sole basis for a private right of action for damages resulting from a violation of section 13(d). *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 574, 99 S.Ct. 2479, 2487, 61 L.Ed.2d 82 (1979); *Gateway Industries, Inc. v. Agency Rent A Car, Inc., supra*, 495 F.Supp. at 98; *Myers v. American Leisure Time Enterprises, Inc.*, 402 F.Supp. 213, 214–15 (S.D.N.Y.1975). Since Abrams has failed to allege the elements of a violation of section 18(a), his cause of action for damages under section 13(d) fails to state a claim upon which relief may be granted.

Accordingly, Count VI of the amended complaint is dismissed. It is so ordered.

## THE DERIVATIVE AND CLASS ACTION COUNTS

■ Although this Court has held that Abrams has adequately stated a cause of action under section 10(b) and Rule 10b–5 with respect to two of the allegations in the amendment to his complaint, it is clear that he cannot maintain the action derivatively on behalf of GSC. Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, a plaintiff in a derivative suit must be a shareholder both at the time the suit is filed and at all relevant times during the pendency of the litigation. *Portnoy v. Kawecki Berylco Industries, Inc.*, 607 F.2d 765, 767 (7th Cir. 1979); *Tryforos v. Icarian Development Co.*, 518 F.2d 1258 (7th Cir. 1975), *cert. denied*, 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976). *See also Kriendler v. Pritzker*, No. 79–0763, Mem.Op. at 9 n.10 (N.D.Ill., Dec. 11, 1979). As the court of appeals noted in *Portnoy*, "[t]he underlying rationale of these cases is that because a shareholder will receive at least an indirect benefit (in terms of increased shareholder equity) from any corporate recovery, he has an adequate interest in vigorously litigating the claim." 607 F.2d at 676. Since the threshold requirement of Abrams' 10b–5 action is that he be a "seller" of securities, which requirement is satisfied by the merger that effectively eliminated the minority shareholders from GSC, he does not meet either of the Rule 23.1 requirements. He was not a shareholder at the commencement of the litigation, with respect to the amendment to the complaint, nor during its pendency since he is constructively viewed as having sold his shares in order to invoke this Court's jurisdiction in the first place. Abrams cannot have it both ways by claiming to be a seller of securities for purposes of standing under 10b–5 and a shareholder for purposes of derivative standing.

■ Abrams' motion to allow this portion of the case to proceed as a class action must also be denied. Abrams describes his

putative class as "all holders of common shares of GSC Enterprises, Inc. on the effective date of the Merger between GSC Enterprises, Inc. and Lincolnwood Bancorporation, Inc., excluding the defendants herein and those acting in concert with them." According to the defendants, however, over 80% of the minority shareholders have exchanged their shares pursuant to the terms of the merger while Abrams has held onto his shares and pursued this action. While this Court recognizes the strong policy favoring class actions in securities fraud cases, *King v. Kansas City Southern Industries, Inc.*, 519 F.2d 20, 26 (7th Cir. 1975), due process requires that the Rule 23 criteria for maintaining a class action, particularly the adequacy of representation embodied in Rule 23(a)(4), be strictly applied to ensure that the interests of the absent class members are well protected. *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 6–7 (N.D.Ill.1977).

■ In the case presented at bar, Abrams' interests are clearly different from and even antagonistic to those of the majority of the class he seeks to represent who have already tendered their GSC shares pursuant to the merger terms. Abrams seeks, in the first instance, rescission of the merger and, in the alternative, monetary relief akin to appraisal for the true value of the GSC shares. It is unlikely that those minority shareholders who tendered their shares nearly three years ago would now want to rescind the merger and resume their position as minority shareholders of GSC. Moreover, at least two shareholders, Phillip Issen and Maurice Settler, have filed a class action in Delaware state court seeking appraisal on behalf of part of the same class of GSC shareholders at the time of the merger that Abrams seeks to represent in this lawsuit. *Issen v. GSC Enterprises, Inc.*, Civil Action No. 5452 (Del.Ch. Newcastle County). Abrams' claim is, therefore, neither typical of those of the class he seeks to represent as required by Rule 23(a)(3) nor do his interests coincide with the bulk of his proposed class as required by one arm of the adequacy of representation requirement embodied in Rule 23(a)(4). Class certification has been denied in similar circumstances involving minority shareholder challenges to corporate mergers and this Court believes that to be the appropriate result in this case as well. *See, e. g., Green v. Santa Fe Industries*, 82 F.R.D. 688 (S.D.N.Y.1979); *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570, 581–82 (S.D.N.Y.1972); *Guttmann v. Braemer*, 51 F.R.D. 537 (S.D.N.Y. 1970). *See also Pomierski v. W. R. Grace & Co.*, 282 F.Supp. 385, 391–93 (N.D.Ill.1967).

## PRELIMINARY INJUNCTIVE RELIEF

On November 7, 1977, Judge Joel Flaum of this Court denied plaintiff's motion for a temporary restraining order preventing the implementation of the GSC going private merger. In denying the motion, Judge Flaum ruled that Abrams had not met his burden of proving that he or the other minority shareholders would suffer irreparable harm if the restraining order was not granted since "[a]ny immediate harm resulting from the transfer of shares can clearly be remedied by money damages." *Abrams v. GSC Enterprises, Inc.*, No. 74–2215, Mem.Op. at p. 3 (N.D.Ill., 11/7/77). Judge Flaum also held that Abrams had not shown a substantial likelihood of success on the merits of the case nor had he shown that the relative hardships of the parties weighed in his favor. *Id.*

■ Abrams then filed a motion for preliminary injunctive relief based upon essentially the same grounds as his motion for a temporary restraining order. The United States Court of Appeals for the Seventh Circuit has consistently looked to four factors in determining whether preliminary injunctive relief is appropriate: (1) whether the plaintiff will be irreparably injured if the injunction does not issue; (2) whether the plaintiff has a reasonable probability of success on the merits; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; and (4) whether the granting of the injunction will serve the public interest. *See Reinders Brothers, Inc. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44 (7th Cir. 1980); *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096 (7th Cir. 1976); *Illinois*

*Migrant Council v. Pilliod*, 540 F.2d 1062 (7th Cir. 1970). Applying these principles to the facts of the case at bar, it is abundently clear that preliminary injunctive relief is inappropriate at this stage of the proceedings.

During the pendency of this motion, which was initially filed before Judge Flaum in November of 1977, the GSC merger has proceeded apace as most of the minority shareholders have tendered their shares in exchange for cash or the 8½% 12-year capital notes of the Lincolnwood Bank. The only shareholders who have challenged the merger are Abrams, the plaintiff in the instant case, and Phillip Issen and Maurice Settler who filed a class action seeking appraisal in Delaware state court. As noted earlier in this opinion, that action has been stayed since November 22, 1977, pending the disposition of Abrams' suit. *Issen v. GSC Enterprises, Inc.*, Civil Action No. 5452 (Del.Ch. Newcastle County, 11/22/77). Therefore, at this juncture an injunction preventing the implementation of the merger and the transfer of shares would have little impact. Moreover, Abrams may be adequately compensated by money damages should he eventually prevail on his remaining securities law claims or pendent state claims in whatever forum the latter may eventually be adjudicated and he thus has failed to show the irreparable injury that is a prerequisite for injunctive relief. This Court further finds that the threatened injury to the plaintiff flowing from the denial of injunctive relief does not outweigh the harm that an injunction might inflict upon the defendants at this point in time.

At this stage, this Court also cannot find that the plaintiff has a reasonable probability of success on the merits of the two claims under section 10(b) and Rule 10b–5 that survived defendants' motion to dismiss. Upon fuller illumination, it may turn out that the actual value of the holdings of Toulin, Inc. rather than the historical cost and the alleged insider agreements for the purchase of shares after the merger would not, as a matter of law, have required disclosure or would not have been material to Abrams' immediate investment decision whether to tender his shares pursuant to the terms of the merger or seek an injunction in state court. Thus, nondisclosure of these facts would not violate section 10(b) or Rule 10b–5. *Healey v. Catalyst Recovery of Pennsylvania, Inc.*, 616 F.2d 641 (3d Cir. 1980); *Wright v. Heizer Corp.*, 560 F.2d 236 (7th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). It would indeed be anomalous to now hold that Abrams has a reasonable probability of success on the merits of these remaining two allegations when Judge Flaum earlier held that no such likelihood existed when Abrams had many more arrows in his quiver. Accordingly, the motion for preliminary injunctive relief is denied. It is so ordered.

## MOTIONS TO SEVER

Defendants Edward Gorenstein and Miller, Cooper and Company have filed motions to sever Counts IV through X of Abrams' 1977 amendment to his complaint from Counts I through III of the original 1974 complaint for purposes of discovery and eventual trial. These motions will be entered and continued until pretrial orders are filed in this matter. It is so ordered.

## CONCLUSION

In summary, all but two of Abrams' claims under section 10(b) and Rule 10b–5 are dismissed for failure to state a claim upon which relief may be granted. Counts V and VI asserting claims for violations of section 14(a) and section 13(d)(1)(C) respectively are similarly dismissed for the reasons set forth in this opinion. Abrams' attempt to pursue this lawsuit derivatively on behalf of GSC and, alternatively, on behalf of the class of GSC shareholders at the time of the merger is denied, as is his motion for preliminary injunctive relief. Finally, certain defendants' motions to sever are entered and continued until the filing of pretrial orders in this matter. It is so ordered.