Richard ATCHLEY, et al.,
Plaintiffs-Appellants,

v.

QONAAR CORPORATION, et al.,
Defendants-Appellees.

No. 82–1696.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1982.

Decided April 1, 1983.

Rehearing Denied April 27, 1983.

Abraham N. Goldman, Chicago, Ill., for plaintiffs-appellants.

Michael Silverman, Kwiatt & Silverman Ltd., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, CU-DAHY, Circuit Judge, and TIMBERS,* Senior Circuit Judge.

CUMMINGS, Chief Judge.

In February 1982, the three named plaintiffs, Richard and Donna Atchley and Joyce Guine, filed a second amended complaint on

---

* The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Ap-  peals for the Second Circuit, is sitting by designation.

behalf of themselves and all shareholders of Qonaar Corporation, a Delaware corporation whose principal place of business was in the Northern District of Illinois. Jurisdiction was predicated upon Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and Section 14 of the Williams Act (15 U.S.C. § 78n). Plaintiffs alleged the following:

Until 1981, defendant Qonaar was a publicly held corporation with its stock traded over the counter. On September 11, 1981, defendant Kroehler Mfg. Co.'s wholly-owned subsidiary, defendant KFM, Inc., made a tender offer of $37 per share to purchase all outstanding Qonaar stock, the tender offer running until October 16, 1981. The tender offer disclosed that Qonaar's directors, officers, and principal stockholders would tender their 134,506 shares of the 352,200 outstanding Qonaar shares in response to the offer and that the offer was conditioned upon the tender of at least a total of 282,000 shares, *viz.*, their 134,506 shares plus an additional 147,494 shares. The complaint alleged that 98% of all publicly held shares were tendered, and on October 31, 1981, Qonaar and KFM, Inc. were merged pursuant to Delaware's short-form merger procedure.

Plaintiff Richard Atchley and his wife, plaintiff Donna Atchley, purchased 350 and 150 shares respectively of Qonaar stock in the summer of 1981. Plaintiff Joyce Guine also purchased 100 Qonaar shares but sold them in October 1981 in response to KFM, Inc.'s tender offer. According to the second amended complaint, the Atchleys' shares were tendered to KFM, Inc. on December 28, 1981, by Dean Witter Reynolds, Inc., a well-known securities house, "without direction and in violation of all express direction to agents and employees. of Dean Witter" which held the Atchleys' shares in "self directed I.R.A. account[s]" (Second Amended Compt. ¶ 3).

Defendant John J. Harvey was allegedly a controlling shareholder in Kroehler, while defendants Robert Rittmaster and Mathew Young were officers, directors and major stockholders of Qonaar. Rittmaster was formerly president of Qonaar but was named president of Kroehler after the merger.

Count I of the second amended complaint is based on Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and SEC Rule 10b–5 thereunder. According to that Count Qonaar had enjoyed "astounding profit and sales growth" from 1978 through 1980 and expected to continue such profitability in view of its dominant position in the markets for parking meters and mass transit coin collection devices (Second Amended Compt. ¶ 9). The defendants were charged with a scheme to acquire 200,000 Qonaar shares by a tender offer after deliberately depressing Qonaar's earnings. The plaintiffs assert that during the first ten months of 1981 defendants took a series of eight actions[1] to reduce Qonaar revenues, increase its expenses, accelerate its depreciation and reduce its assets. As a result of their actions, the tender offer materials and solicitations mailed to Qonaar shareholders in 1981 showed income of 50¢ per share for the first six months of 1981, whereas the annual profits per share had been $1 in 1978, $2.50 in 1979, and over $5 in 1980. Because of the dissemination of the "artificially low statement of income enjoyed by Qonaar in 1981," 98% of Qonaar's publicly held shares were tendered to KFM, Inc. at $37 per share, whereas their true value was up to $200 (Second Amended Compt. ¶¶ 15, 16, 17, 18).

Further, plaintiffs alleged that defendants knew the artificially low value would materially affect investment decisions and alleged that plaintiff Guine relied on the low statement of Qonaar's earnings contained in its tender offer solicitations in selling her 100 shares of Qonaar stock to KFM, Inc. in the fall of 1981. Plaintiffs claimed that the "artificial depression or sabotage of Qonaar income, communicated to the * * * shareholders * * * in connection with the tender offer * * * constituted a manipulative and a deceptive device and contrivance" in violation of Section 10(b)

---

**1.** These actions are quoted in full in the Appendix hereto.

and Rule 10b–5. The individual plaintiffs and the class suffered economic injury in excess of $20,000,000.[2]

Count II realleged the actions taken by defendants in Count I and added that defendants omitted five additional facts in their tender offer in violation of Section 14(e) of the Williams Act (15 U.S.C. § 78n(e)).[3] This Count also sought $20,000,000 in damages for Qonaar shareholders.

Finally, the second amended complaint contained six class action allegations, stating that the individual plaintiffs were typical of the class of Qonaar shareholders because they were not privy to the defendants' alleged scheme of understating the true value of Qonaar securities in order to acquire the outstanding Qonaar stock at $37 per share.

Late in February 1982, defendants filed a motion to dismiss the second amended complaint or for summary judgment in their favor. On March 29, the district court filed a memorandum opinion and order granting defendants' motion to dismiss (App. A–11 to A–20). After citing several cases from this Circuit and the Second Circuit, Judge Kocoras concluded that the plaintiffs had standing to sue, a conclusion no longer contested by defendants. However, he determined that the series of acts alleged in both Counts as taken by defendants to reduce Qonaar revenues, increase its expenses, accelerate its depreciation and reduce its assets involved at most a breach of fiduciary duty, justifying dismissal of both Counts under *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480. In reliance on Part IV of *Santa Fe, id.* at 477–480, 97 S.Ct. at 1303–1304, the court

found there was no federal cause of action here because breach of fiduciary duty or corporate mismanagement claims were traditionally relegated to state law. A remedy existed in this case under Delaware law, which supplied minority shareholders with a cause of action in its Court of Chancery to recover the fair value of shares allegedly undervalued in a short-form merger. The district judge also ruled that Richard and Donna Atchleys' claims under both Counts I and II should be dismissed because, by virtue of his position as president of Qonaar's Mass Transit Division from April to October 16, 1981,[4] he had access to records from which he could determine whether the tender offer material included misrepresentations and misstatements. Since the "sum total of the information available to Atchley was sufficient to alert any reasonable person to misstatements or omissions" (App. A–17), the court presumed that Atchley would have conveyed such information to his wife. Therefore Judge Kocoras thought the Atchleys had not established that they reasonably relied on information provided by defendants and that they exercised due diligence in examining information otherwise available to them.

Consequently, the second amended complaint was dismissed, resulting in this appeal. On careful analysis, we conclude that the second amended complaint was not based solely on a breach of fiduciary duties or corporate mismanagement and reverse and remand.

*Adequacy of Securities Exchange Act Count*

Judge Kocoras granted the motion of defendants to dismiss the second amended

---

**2.** Since plaintiffs allege that their class's 217,694 shares were undervalued by the tender offer by at least $100 per share, that results in damages of $21,769,400, with the *ad damnum* alleged in each Count as "in excess of $20,000,000."

**3.** These facts were, in brief:
  1. No personnel qualified in transit sales at the Mass Transit Division from April 1981 through November 1981.
  2. Donation of $750,000 in Qonaar assets to mass transit authorities.

  3. Artificial reduction of Qonaar's stated assets by writing off $3,000,000.
  4. Non-disclosure of additional remuneration promised defendants Rittmaster and Young and non-defendant Richard Sloma, all officers/shareholders of Qonaar.
  5. Formation of scheme and plan to "depress and artificially sabotage the earnings capacity of Qonaar."

**4.** The fact that Richard Atchley was president of Qonaar's Mass Transit Division did not appear in the second amended complaint or the attached tender offer materials.

complaint rather than granting them summary judgment in accordance with the alternative prayer of their supporting memorandum. Accordingly, the district court and we must take the allegations of the second amended complaint as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–1082, 31 L.Ed.2d 263 (per curiam); *Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 432 (7th Cir.1978).

In Count I, plaintiffs rely upon Section 10(b) of ·the Securities Exchange Act of 1934 (15 U.S.C. § 78j). In pertinent part, Section 10(b) forbids persons to employ in connection with the sale of any security "any manipulative or deceptive device or contrivance" in contravention of the SEC's rules and regulations. In conjunction with Section 10(b) they also rely upon SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, which provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

■ Judge Kocoras ruled that Count I failed to state a claim under either Section 10(b) or Rule 10b–5 on the ground that Count I only alleged a "breach of fiduciary duty owed by defendants to minority shareholders of the target company," corporate mismanagement, or impure motives (App. A–16). It is true that under *Santa Fe Indus., Inc., supra,* plaintiffs' claims would not be cognizable under these provisions if they only involved a breach of fiduciary duty or corporate mismanagement. It is

also true that a party cannot " 'bootstrap' such a claim into a federal securities action by alleging that the disclosure philosophy of the statute obligates defendants to reveal either the culpability of their activities, or their impure motives for entering the allegedly improper transaction." *Panter v. Marshall Field & Co.,* 646 F.2d 271, 288 (7th Cir.1981), certiorari denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631. See also *Bucher v. Shumway,* [1979–80 Transfer Binder] Fed.Sec.L.Rptr. (CCH) ¶ 97,142 at 96,301 (S.D.N.Y.1979), affirmed without opinion, 622 F.2d 572 (2d Cir.1980); *Hundahl v. United Benefit Life Ins. Co.,* 465 F.Supp. 1349, 1365–1366 (N.D.Tex.1979); *Issen v. GSC Enterprises, Inc.,* 508 F.Supp. 1278, 1288 (N.D.Ill.1981). That the securities laws do not require defendants to reveal their culpability or motives does not, however, allow them to make untrue statements of material facts or fail to state material facts necessary to cure misleading statements. Indeed, the courts in both *Hundahl, supra* 465 F.Supp. at 1365, and *Issen, supra* at 1292–1293, held that plaintiff stated a federal securities claim with respect to at least one allegation of nondisclosure.

■ Although some of plaintiffs' allegations may fall within the confines of *Santa Fe* in that they allege a failure to disclose defendants' culpability or motive, other allegations are more substantial. According to the second amended complaint, to accomplish their ends, defendants consciously embarked on a scheme to depress Qonaar's earnings so that they could acquire its stock at a price of $37 per share even though "at a nominal price/earnings ratio," it was worth up to $200 per share (Second Amended Compt. ¶ 18). Plaintiffs alleged a series of underlying facts which were not disclosed which would have affected the valuation of the stock (Second Amended Compt. ¶¶ 14a–14h). *Cf. Bucher v. Shumway, supra* at 96,301. As a result of defendants' actions outlined in the Appendix to this opinion, Qonaar's income plunged to only 50¢ per share for the first time since 1981, resulting in a tender of 98% of the publicly

held shares. Although the tender offer did mention one reason for decreased sales and revenue (App. 26), the facts alleged by plaintiffs, if true, would have placed the financial information in the tender offer in an entirely different light; a realistic valuation surely "would have assumed actual significance in the deliberations of a reasonable shareholder." *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757. These allegations satisfy not only the language of Section 10(b) itself prohibiting the use of any manipulative or deceptive device or contrivance, but also the language of Rule 10b–5 thereunder. See *Texas Partners v. Conrock Co.,* 685 F.2d 1116, 1121 (9th Cir.1982); *Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278, 1281–1282 (9th Cir.1982); *SEC v. MacDonald,* 699 F.2d 47, 49–50 (1st Cir.1983); *Spatz v. Borenstein,* 513 F.Supp. 571, 578–581 (N.D.Ill. 1981); *Issen v. GSC Enterprises, Inc.,* 508 F.Supp. 1278, 1292–1293 (N.D.Ill.1981). Count I also contains an adequate statement of detrimental reliance since it alleges that plaintiff class member Guine relied upon the contrived statement of Qonaar earnings in tendering her shares of stock to KFM, Inc. in the fall of 1981.

In sum, the district judge read Count I too narrowly. We hold that plaintiffs have sufficiently alleged that defendants engaged in deceptive and misleading statements and conduct in violation of Section 10(b) and of Rule 10b–5 in contrast to a mere breach of fiduciary duty or corporate mismanagement not covered by that Section and Rule under *Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480.

### *Adequacy of Count II*

Count II of the second amended complaint is based solely on Section 14(e) of the Williams Act, 15 U.S.C. § 78n(e), which provides as follows:

It shall be unlawful for any person to make any untrue statements of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

In addition to incorporating the Count I allegations that are sufficient to withstand defendants' motion to dismiss, Count II contains additional allegations some of which fit within the statutory language. See *supra* note 3.

As explained in *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 359 (2d Cir.1973), certiorari denied, 414 U.S. 910, 94 S.Ct. 232, 38 L.Ed.2d 148, Section 14(e) was added to the Securities Exchange Act of 1934 by the Williams Act of 1968 to provide for "openness and truthfulness in the solicitation of shares through tender offers," because of the increase of the popular method of obtaining a majority of a corporation's stock rather than its assets. As we stated in *Panter v. Marshall Field & Co.,* 646 F.2d 271, 283 (7th Cir.1981), certiorari denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631:

Section 14(e) of the Williams Act is a broad antifraud provision modeled after SEC Rule 10b–5, and is designed to insure that shareholders confronted with a tender offer have adequate and accurate information on which to base the decision whether or not to tender their shares. (Footnote omitted.)

The general objective of the Williams Act was to encourage an "accurate disclosure of information relevant to a tender offer." *Chris-Craft Indus., Inc., supra* 480 F.2d at 361.

The *Santa Fe* analysis is the same for claims under Section 14(e) as it was for claims under Section 10(b). *Panter v. Marshall Field & Co., supra* [646 F.2d] at 271,

282. We thus hold that at least some of the acts pleaded under Count II constitute conduct which is actionable under the securities laws, and that a fair reading of the allegations shows that the misstated and omitted facts would certainly be material to a reasonable person's decision to tender stock pursuant to a tender offer.

We therefore conclude that Counts I and II state a claim under the federal securities laws.

### The Atchley Plaintiffs

■ Judge Kocoras also dismissed the Atchley plaintiffs on an alternative ground, holding that Richard Atchley, through his position as former president of the Mass Transit Division, knew or should have known of the defendants' untrue or misleading assertions of fact. Indeed, plaintiffs' counsel at oral argument on appeal admitted that Mr. Atchley did have knowledge of these facts, and that was the reason the allegations were able to appear in the complaint. Further, their counsel indicated that the Atchleys did not tender their stock "just because of that reason, because they felt that the stock was substantially in excess of $37 per share." The Atchleys' real complaint appears to be against Dean Witter Reynolds, Inc., which allegedly tendered the stock in violation of the Atchleys' instructions.[5] Nevertheless, because this case was decided on a motion to dismiss and the second amended complaint alleges that all three representatives of the class were not privy to the scheme (Second Amended Compt. ¶¶ 6, 31), the district court on remand should look into the question of any Atchley reliance on the tender material. If they did not rely on the untrue or misleading assertions of fact, they should again be dismissed from this litigation. See *Panter, supra* at 283–284; *Bell, supra* 669 F.2d at 1281; *Hundahl, supra* 465 F.Supp. at 1368–1370.

■ Finally, this suit was filed in the district court in November 1981, and plaintiff Guine's subsequent filing of a state court case against defendants and Richard Sloma[6] in June 1982 does not, contrary to defendants' view, justify the dismissal of the federal suit. *Evans Transp. Co. v. Scullin Steel Co.,* 693 F.2d 715 (7th Cir.1982). In any event, we were told at oral argument that Guine's state court class action was dismissed as *res judicata* because of the district court's opinion herein, but that Guine's motion to reconsider was still pending.

The order of the district court granting defendants' motion to dismiss the second amended complaint is reversed and the cause is remanded for further proceedings not inconsistent herewith.[7] Circuit Rule 18 shall apply.

### APPENDIX

The plaintiffs alleged in both Counts of their second amended complaint that defendants took the following 8 actions during the first ten months of 1981 to accomplish their goal of reducing Qonaar revenues, increasing Qonaar expenses, accelerating Qonaar depreciation and other reductions of assets:

1. That the Vice President for Sales of the Mass Transit Division of Qonaar, as well as the Chief Engineer of the Mass Transit Division were terminated in the first six months of 1981 without cause but to advance the plan and scheme of artificial reduction in sales, revenues and profits of the Mass Transit Division for 1981.

2. That substantial sales were not effected by the Mass Transit Division of Qonaar solely at the direction of Corporate officers.

3. That contracts requiring the payment to Qonaar of more than $750,000 were

---

5. On September 7, 1982, Judge Kocoras dismissed the Atchley plaintiffs' complaint in *Atchley v. Dean Witter Reynolds, Inc.,* No. 82 C 926. The case is presently on appeal to this Court.

6. See note 3 *supra* where Sloma is identified.

7. Since the district court has not yet certified a class, that issue will have to be decided on remand.

renegotiated to delay the receipt of said revenues until after the term of the Tender Offer. Phoenix, Arizona, for example, owed more than $700,000 to the Mass Transit Division but such debt was unilaterally deferred by Qonaar until after the Tender Offer.

4. That the shipment of substantial orders from the Mass Transit Division was delayed and purposefully withheld until after the Tender Offer termination date: Waco Texas, Phoenix Arizona, and Macon Georgia, among others, suffered the unilateral delay of ordered equipment and, as a consequence, withheld more than $750,000 in payments due to Qonaar.

5. That expenses were purposefully inflated by the acceleration of liabilities for materials, parts and other supplies. Invoices were requested from cooperating businesses and were paid even though shipments of materials justifying the obligations were not yet due or delivered. Participating companies included O'Neil Design, Dallmeyer and Co., Renelle Electronics, Brandt and Co., Dean Metals, Dynamics Inc. and others.

6. That substantial donations in materials, services, gifts and other benefits were effected by Qonaar in significant departure from prior practice, to both increase expenses during the pre-tender offer period and to foster a more favorable business climate after the tender offer conclusion. More than $700,000 in parts and supplies was donated to Chicago, Illinois and the Westchester County, N.Y. transit authorities. Lavish entertainment and valuable gifts were given to numerous public officials * * *.[8] These gifts and numerous others were made in knowing violation of public employee gift legislation.

7. That a plan to create a $3,000,000 loss for Qonaar in the term prior to the tender offer takeover by Kroehler (created by the accounting firm of Coopers & Lybrand) was effected in mid-1981 by taking false write-offs, falsely designated bad debts and other accounting devices so that a false statement of Qonaar assets resulted. The falsity of such asset statements was purposefully withheld from Qonaar shareholders.

8. That Orders for equipment and parts to various transit authorities were terminated and deferred unilaterally by Qonaar Corporate management to defer income and profits until after the Tender Offer. Sacramento, California's needs for coin collection equipment were deferred by Qonaar so that specifications in the city's public authorization for equipment could be redrawn to preclude other competition from bidding on the order.

---

**8.** The asterisks replace the list of eleven individuals and other gift recipients.