Eugene FARMILANT, Plaintiff,

v.

SINGAPORE AIRLINES, LTD., Defendant.

No. 82 C 1270.

United States District Court, N.D. Illinois, E.D.

April 15, 1983.

Scott L. David, Engerman, Erlich, Jacobs & Berman, Ltd., Chicago, Ill., for plaintiff.

John B. Lashbrook, Pope, Ballard, Shepard & Fowle, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Eugene Farmilant ("Farmilant") sues Singapore Airlines, Ltd. ("Airline"), alleging fraudulent misrepresentation, "tortious breach of contract," negligence and willful and wanton conduct in connection with Airline's failure to furnish him passage on flights from Singapore to Madras, India and from Madras back to the United States. Airline has moved for summary judgment. For the reasons stated in this memorandum opinion and order:

1. Airline's motion is denied.

2. This Court finds (a) certain "material facts exist without substantial controversy" (Fed.R.Civ.P. ("Rule") 56(d)) and (b) those facts show Farmilant cannot prove damages in excess of $10,000 as required by 28 U.S.C. § 1332.

This action is therefore dismissed for want of subject matter jurisdiction under Rule 12(h)(3).

### Summary Judgment Principles

Summary judgment under Rule 56(c) may be granted only if "the record reveals the absence of any genuine issue of material fact." *Sahadi v. Continental Illinois National Bank and Trust Co. of Chicago*, No. 82–1767, 706 F.2d 193 at 196. (7th Cir.1983). But Rule 56(d) contemplates the situation where, on summary judgment motion, the court finds certain "material facts exist without substantial controversy" and other "material facts are actually and in good faith controverted." Although the summary judgment motion must then be denied, the uncontroverted facts are "deemed established" in any "further proceedings." *Id.*

In ascertaining the uncontroverted and controverted facts this Court must grant Farmilant all inferences in his favor from the record, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), including inferences drawn from Airline's submissions, *Thornton v. Evans*, 692 F.2d 1064, 1074–75 (7th Cir. 1982). Those favorable inferences, however, must derive from record facts, not from Farmilant's unsupported allegations or suspicions. *See Menefee v. General Electric Co.*, 548 F.Supp. 619, 621 (N.D.Ill.1982).

### Uncontroverted Facts

In accordance with Rule 56(d) this Court specifies the following "facts ... appear without substantial controversy" and are "deemed established":

1. On November 12, 1981[1] Farmilant went to Airline's office in Chicago and purchased a ticket for travel as follows: Los Angeles to Tokyo; Tokyo to Singapore; Singapore to Madras; Madras to Singapore; Singapore to Honolulu; and Honolulu to Los Angeles. Complaint Ex. A. Farmilant's ticket allowed a stopover in Tokyo on the outward journey and a stopover in Honolulu on the return trip. Although Farmilant purchased a ticket for the entire trip, he booked a reservation for only the first leg, the December 3 flight from Los Angeles to Tokyo (that was the earliest date on which the applicable fare basis permitted travel). All the rest of the journey was left "open" at Farmilant's request. Farmilant Dep. ("Dep.") 65–67.

2. Farmilant departed for Tokyo from Los Angeles on December 3 and arrived as scheduled. *Id.* at 74. Upon his arrival in

---

1. All subsequent dates without year designations were also in 1981.

Tokyo, Farmilant decided to change his travel plans to include a stopover in Hong Kong to allow a side trip into the Peoples' Republic of China. On December 7 Farmilant went to Airline's office in Tokyo and booked a December 9 flight to Hong Kong. *Id.* at 76–77. He was issued a new ticket that included passage from Tokyo to Hong Kong, Hong Kong to Singapore, and Singapore to Madras. *Id.* at 77–78. Farmilant still retained his original ticket to cover passage from Madras back to the United States. Apart from booking a specific flight (Airline's Flight No. 7) from Tokyo to Hong Kong, again Farmilant's new ticket was "open" beyond the next leg of his continuing trip. And again the open portions of Farmilant's ticket were left open at his request to accommodate his need for flexibility. *Id.* at 76–78.

3. On December 9 Farmilant flew from Tokyo to Hong Kong. *Id.* at 79. Once more he changed his plans and decided not to travel into China. *Id.* at 79–80. On December 11 Farmilant visited Airline's office in Hong Kong to make travel arrangements to Madras. He was booked for a December 13 flight to Singapore. *Id.* at 83, 86. Airline, however, could not make a reservation for Farmilant on the connecting flight from Singapore to Madras. Farmilant was waitlisted on the flight from Singapore. February 1, 1983 Affidavit of Adriaan Arends ¶ 2(c) and (d).

4. Upon arriving in Singapore the evening of December 13 Farmilant tried to get passage on that night's flight to Madras. He was told no seats were available and flights from Singapore to Madras were booked for the next three weeks. Airline made alternative arrangements for Farmilant to fly December 16 from Singapore to Bombay instead of Madras. *See* Dep. 106, 109, 118.

5. From Bombay Farmilant took a December 18 train to Madras. During the train trip Farmilant became ill. He somewhere had "[r]eceived a bad meal and was very ill for 2 days (constant vomiting). Had very bad stomach pains that would not

subsist [sic]." *Id.* at 140–41 & Ex. 3.[2] Two days after arriving in Madras, Farmilant traveled on by bus to Mahabalipuram, his ultimate destination in India where he intended to study stone sculpture. Farmilant's notation for December 21 reads: "Went to Mahabalipuram (to study Sculpture)[.] Was in so much pain that i [sic] decided the wisest thing to do was go home for medical treatment." *Id.* At that point Farmilant had not sought any medical treatment or taken any medication. Dep. 152.

6. On December 24 Farmilant called Airline in Madras for a reservation on a flight back to the United States. He was told the earliest seat available would not be until February 4, 1982. Dep. Ex. 3. On December 27 Farmilant went to Airline's office in Madras. He claimed he was ill and feared for his life. *Id.* After further unsuccessful efforts to get a reservation on one of Airline's flights, Farmilant purchased a ticket for return to the United States on another carrier. *Id.*

7. Farmilant sought medical treatment on his return to Chicago and was later hospitalized for 12 days. Dep. 170–74.

### Farmilant's Damages

If all those facts were recited in a first-year law school examination question (from which they might appear to have been lifted), the most obvious issue for the student to spot would be whether Airline could be liable for any damages associated with Farmilant's illness. Farmilant attributes the illness to food bought from a vendor at a stop on his railroad trip from Bombay to Madras. *Id.* at 140–41. Obviously that intervening or superseding cause would cut off Airline's liability whether Farmilant were proceeding on a tort or a contract theory. Farmilant embarrasses himself when he says (Ans.Mem. 13) "the possibility of his becoming ill during his transportation to Madras was … reasonably foreseeable by" Airline. Farmilant and his counsel would do well to read any of the host of

---

**2.** Dep.Ex. 3 is a chronological summary prepared by Farmilant for this action.

cases exemplified by *Central of Georgia Ry. Co. v. Price,* 106 Ga. 176, 32 S.E. 77 (1898). *See generally* W. Prosser, *Law of Torts* § 44 (4th ed. 1971).

Once the established facts preclude recovery for Farmilant's medical bills, the only compensatory damages arguably involved are (1) the *extra* living costs incurred by Farmilant from December 13 to 16 in Hong Kong, (2) any *extra* cost incurred by his need to travel by rail from Bombay to Madras (including the price of his adulterated food?) and (3) any *extra* cost incurred by his need to use another carrier for his flight from Madras home. Even in an era of worldwide inflation, those costs of course amount to far less than $10,000.[3]

Farmilant also asks for punitive damages, and maybe he thinks that prayer gets him over the jurisdictional hurdle. Not so: by a basic common-law principle, punitive or "exemplary" damages are recoverable only when the conduct complained of is accompanied by aggravating circumstances like willfulness, malice or fraud—mere negligence is not enough. *See* 15 I.L.P. Damages § 132.[4]

True, Farmilant alleges Airline's fraudulent misrepresentation (Count I), "tortious" breach of contract (Count II), negligence (Count III) and willful and wanton conduct (Count IV). But the established facts preclude Farmilant's showing the requisite fraud, malice or similar aggravating factor on Airline's part.

Were this a threshold motion to dismiss the Complaint for want of subject matter jurisdiction, Farmilant would be entitled to the speculative benefit of any facts he might conceivably prove in support of his well-pleaded allegations. On a motion for summary judgment, though, he is not entitled to hold back his heavier fire for the ultimate trial—for it may never come. *See Walker v. Hoffman,* 583 F.2d 1073, 1075 (9th Cir.1978) (quoting *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972)), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). Accordingly Farmilant may properly be accorded the benefit of favorable inferences only from established facts and from his own asserted facts (accepted as true for these purposes)—no more.

Farmilant claims (Dep. 67) he was assured by Airline's Chicago agent he would have "no problem" booking passage throughout the Orient. But Farmilant purchased an "open" ticket without reservations beyond Tokyo. It is not reasonably inferable the Chicago agent was maliciously motivated to mislead Farmilant in November that he would be unable to obtain a seat on a flight he would choose only at some indefinite time in the future. That point is underlined by the fact Farmilant wound up in Hong Kong (and seeking a particular flight to Madras) only after changing plans twice en route.

Even taking Farmilant's account of Airline's Chicago agent's representation as true, the inference most favorable to Farmilant is of negligence: failure to warn Farmilant that certain permutations in his travel plans might cause him some delays. There was just too much uncertainty at that point to infer from the facts any malice or fraud or evil intent on the agent's part.[5]

---

**3.** Because Farmilant is evidently a man of leisure, planning as he did a relaxed year's sojourn in the Orient (Dep. 58–59), no lost opportunity costs are involved in calculating the damages caused by his delay in reaching Madras. Nor does he advance any such claim.

**4.** As the later text discussion reflects, Farmilant's best argument concerns Airline's alleged negligence in Hong Kong. That raises the question what law Illinois courts would apply to Farmilant's tort and contract claims. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). As Airline points out (Mem.

12 n. 3), Farmilant has not given notice under Rule 44.1 he intends to raise any foreign law issue. In any event, the discussion here is based on common law principles (they certainly apply in Illinois, and there is no indication they do not also apply in Hong Kong, a British crown colony).

**5.** Not surprisingly the agent denies any such misconduct. *See* January 20, 1983 Affidavit of Frances Alexander ¶ 5. For present purposes, though, her denial is not accepted as conclusive simply because she says so. It is rather that *Farmilant* has adduced nothing to support a different conclusion.

**1152**

It will be recalled Farmilant was only waitlisted on the connecting December 13 flight from Singapore to Madras. Nonetheless he claims (*id.* at 87–89, 104, 108–09) he was assured or led to believe by Airline's agents in Hong Kong he was confirmed on that flight. But he also says (*id.* at 87–88) the Hong Kong agents were not Airline's own employees, but those of another carrier.

That fact certainly permits the inference Airline was negligent in not informing its on-site aides of its codes and its procedures. However, the same fact precludes the possibility *Airline* was acting maliciously or fraudulently through its agents—that it did so specifically to induce Farmilant to buy a ticket that, despite its explicit provision, would really not guarantee him a seat. Airline just did not have that kind of control of its Hong Kong representatives. Moreover, there is no hint Airline had any interest in being stuck with Farmilant in Singapore rather than Hong Kong, and after all Airline did eventually arrange Farmilant's passage to Bombay.

Finally, however much it might have been in Airline's business interest to honor Farmilant's emergency request for transportation back to the United States, no malice or fraud or wantonness may be inferred from its refusal to "bump" a reserved passenger from one of its flights to accommodate Farmilant. Farmilant was simply not entitled to that preferential right. *See* February 1, 1983 Affidavit of Janis Pignataro, Ex. 1 at ¶¶ A & B.

No doubt Farmilant's excursion to India was beset with woe. Perhaps Airline was negligent toward him. But there just is no evil inferable in this action. Farmilant must simply be told, "Don't try to make a federal case out of it." *See Ross v. Inter-Ocean Insurance Co.,* 693 F.2d 659, 662–63 (7th Cir.1982).

### Conclusion

Airline's summary judgment motion is denied. This action is dismissed for lack of subject matter jurisdiction.