**David LICHTER, Plaintiff,**

v.

**PAINE, WEBBER, JACKSON & CURTIS, INC., Defendant.**

No. 83 C 2834.

United States District Court, N.D. Illinois, E.D.

Aug. 29, 1983.

534

Peter D. Kasdin, Philip J. Nathanson, Chicago, Ill., for plaintiff.

Michael B. Roche, Jeffrey B. Lieberman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

David Lichter ("Lichter") sues Paine, Webber, Jackson & Curtis, Inc. ("Paine Webber") for having failed to notify Lichter of the need to deposit funds in his securities account before Paine Webber liquidated International Harvester bonds to maintain Lichter's requisite margin requirements. Lichter's Complaint advances four claims stemming from that failure to give him advance notice:

1. Section 15 is obviously inapplicable here, and Lichter has therefore withdrawn Count IV in his Ans.Mem. 9. This order will therefore include formal dismissal of that Count.

2. For Rule 12(b)(6) purposes this Court of course accepts all well-pleaded allegations of the Complaint, together with reasonable inferences favoring Lichter. *Mathers Fund, Inc. v.*

1. Count I charges negligence (and perhaps breach of an implied contractual duty).

2. Count II asserts breach of a fiduciary duty.

3. Count III claims a violation of Securities Exchange Act of 1934 ("1934 Act") § 10(b), 15 U.S.C. § 78j(b) ("Section 10(b)").

4. Count IV claims a violation of 1934 Act § 15, 15 U.S.C. § 78o ("Section 15").[1]

Paine Webber has now moved:

(1) to dismiss Counts I and II under Fed.R.Civ.P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction and

(2) to dismiss all counts under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

If all counts are not so dismissed, Paine Webber seeks severance of Counts I and II for arbitration pursuant to an alleged contract between the parties.

### Facts[2]

On March 18, 1974 Lichter entered into a Customer Agreement (the "Agreement") with Blyth Eastman Dillon & Co. (since merged into Paine Webber[3]) covering Lichter's opening of a securities margin account. In a course of dealing extending over eight and one-half years, whenever Lichter's equity in the account fell below the required level Paine Webber would notify Lichter and Lichter would deposit the necessary funds. Lichter so responded to such margin calls on (at least) April 28, 1982, September 22, 1982 and October 5, 1982.

On the October 5 margin call Paine Webber notified Lichter (1) his account required $538 to meet the requirements and (2) if sufficient funds or securities were not deposited by Lichter before noon October 8,

*Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977). Nor is this Court limited to the legal theories set forth in the Complaint. *Craft v. Board of Trustees,* 516 F.Supp. 1317, 1323 (N.D.Ill.1981).

3. To avoid confusion this opinion will consistently refer to Paine Webber as though it were the original contracting party.

Paine Webber would liquidate an appropriate amount of securities. On October 8 Lichter authorized the sale of 1,000 shares of Massey Ferguson, Ltd. stock to cover the delinquency.

On October 8—this time wholly without notice—Paine Webber liquidated Lichter's International Harvester 8⅝%, September 1, 1995 bonds ("IH bonds") in addition to the Massey Ferguson stock. That IH bonds sale, undertaken to cover a further required increase in Lichter's margin account, netted some $12,000.

### Analysis of Lichter's Claims

In federal jurisdictional terms it makes most sense to consider Count III first. Were that count to survive, this Court might elect to retain pendent jurisdiction over the non-federal claims in Counts I and II. But if Count III must be dismissed, this Court also has to consider whether Counts I and II have an independent jurisdictional basis.

### 1. Count III

■ Section 10(b) makes it unlawful "to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device or contrivance in contravention" of SEC rules or regulations.[4] Although Lichter charges the failure to notify him of added margin requirements was manipulative or deceptive under Section 10(b), the Complaint's facts do not support that contention.

*Santa Fe Industries v. Green*, 430 U.S. 462, 478, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977) teaches Section 10(b) is not a remedy for every breach of contract or breach of fiduciary duty traditionally redressable under state law. *See also, Atchley v. Qonaar Corp.*, 704 F.2d 355, 358 (7th Cir.1983). Such an expansion of federal law is unwarranted when state law remedies the situation. Thus *Santa Fe* refused to expand

Section 10(b) beyond what the Supreme Court considered its clear statutory meaning (as to "manipulative," 430 U.S. at 476, 97 S.Ct. at 1302; as to "deceptive," *id.* at 475–76 & n. 15, 97 S.Ct. at 1301–02 & n. 15).

Here the alleged deception was Paine Webber's failure to notify Lichter before liquidating the IH bonds. Even assuming the parties' prior course of dealing imposed a duty of notification on Paine Webber, its breach of that duty is neither "deceptive" nor "manipulative" as *Santa Fe* read those terms. Lichter does not assert for example (1) Paine Webber liquidated the IH bonds other than to satisfy a margin call or (2) Lichter did not get credit for the sale of the IH bonds or (3) the IH bonds were sold for less than their fair market value.

"Manipulative" is "virtually a term of art when used in connection with securities markets," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976). That term-of-art meaning is wholly inapplicable here. "Deceptive" is likewise an inapt way to characterize the alleged deprivation of Lichter's opportunity to deposit funds in his account to meet a margin call—funds that, if available, could just as easily be used to replace the freely-replaceable liquidated bonds. That is not "deception" touching the sale of securities, at which the 1934 Act is aimed.

Neither securities law concept thus applies to Paine Webber's conduct. At best Lichter's claim is one based upon state law for negligence or a breach of fiduciary duty. *See also Zerman v. Jacobs*, 510 F.Supp. 132 (S.D.N.Y.), *aff'd without opinion*, 672 F.2d 901 (2d Cir.1981).

Accordingly Count III is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. It joins Lichter's other securities law claim, Count IV, on the sidelines.

### 2. Counts I and II

If Lichter is to stay in federal court, then, he must sustain Counts I and II on diversity

---

4. Despite Paine Webber's prodding (Mem. 8), Lichter has failed to identify a violation of any specific rule or regulation. Nonetheless this Court will (consistently with Rule 12(b)(6) prin-

ciples) assume Lichter claims violation of SEC Rule 10b–5, the rule most often invoked under Section 10(b) and the one arguably implicated by the facts of this case.

jurisdictional grounds. Paine Webber has moved to dismiss those two counts under Rule 12(b)(1) because Lichter could not conceivably prove in excess of $10,000 in damages.

■ For Rule 12(b)(1) purposes, the amount claimed by a plaintiff in good faith is determinative unless it appears to a legal certainty that the claim is for less than the jurisdictional amount. When that issue is disputed factually, the court is not limited to the complaint's allegations and the plaintiff has the burden of proof on the matter. *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979). To that end the plaintiff is entitled to the benefit of any facts he could conceivably prove in support of his allegations. *Farmilant v. Singapore Airlines, Ltd.*, 561 F.Supp. 1148, 1151 (N.D.Ill. 1983).

Thus far the parties (and this Court) are together in dealing with the problem. Where Lichter goes astray is in viewing the issue as one involving *mitigation* of damages—a matter of defense—rather than *proof* of damages—a matter of Lichter's own burden in establishing his claim. Brief further analysis will highlight the difference.

Suppose Paine Webber had (and exercised) access to a bank account of Lichter's, rather than his securities, in meeting the margin call. Clearly Lichter would have suffered *no* damages at all. After all he owed the money: His duty to provide the funds is undisputed. Thus the fact he would have been deprived of the use of that money could not be the occasion for complaint; it is irrelevant.

Suppose instead Paine Webber simply attached Lichter's IH bonds—exercised dominion over them by holding them as security until Lichter came up with the money he owed to satisfy margin requirements. When Lichter then paid the necessary funds (whether obtained by liquidating other securities or in any other way) the IH bonds would have been restored to him. Again the analysis would be the same: No harm, no foul—*no* damages.

Thus Lichter's only demonstrable harm lay in the fact of *liquidation* of the IH bonds by Paine Webber. *That* event triggered his damages if any, and *that* event defines when any damages were sustained. Because full market price was realized for the bonds, Lichter must look elsewhere for any damages. And on that "elsewhere" score, it is not as though Paine Webber had converted an irreplaceable Van Gogh. Replacement IH bonds were readily available on the market if Lichter wanted them and had the price. If he did *not* have the price he cannot complain, for by definition he would have been unable to meet his cash margin obligation and could have been sold out by Paine Webber as a matter of right.

■ All Lichter can conceivably cavil about, then, is any time lag in his ability to replace the bonds caused by the lack of notice. Though his Complaint does not specify when he learned of the October 8, 1982 liquidation, by October 18 his lawyer wrote Paine Webber (Mem. Ex. 3) complaining of the "wrongful sale" and demanding a return of the bonds within ten days. So part of Lichter's *proof* of damages sustained—and not merely an element of the need to mitigate damages—would have to be a showing he had been deprived of value by being deprived of the IH bonds during that period.

Paine Webber has been more generous in terms of time. It adduces the market prices of IH bonds for the period beginning October 8, and it shows the spread between the liquidation proceeds and the market replacement cost—Lichter's only possible damages—could not have reached the $10,-000 mark at any time during the next four months!

That plainly shows to a legal certainty Lichter was not damaged in excess of $10,-000. *Cf. Ross v. Inter-Ocean Insurance Company*, 693 F.2d 659, 662–63 (7th Cir. 1982); *Farmilant*, 561 F.Supp. at 1152. And that legal certainty means this Court lacks jurisdiction over Counts I and II as well.

*Conclusion*

Counts I, II and III are dismissed for lack of subject matter jurisdiction. Count IV, having been withdrawn for obvious want of merit, is also dismissed. Consequently this action is dismissed in its entirety.[5]

5. Though dismissal is final in terms of federal jurisdiction, Lichter may still have a state law claim. Accordingly the dismissal of Counts I and II is without prejudice.