John BANNON, Plaintiff,

v.

JOYCE BEVERAGES, INC., et al., Defendants.

No. 84 C 1642.

United States District Court, N.D. Illinois, E.D.

Jan. 27, 1987.

William A. Allison, Bloomington, Ill., Philip V. Martino, Rudnick & Wolfe, Chicago, Ill., for plaintiff.

Sheldon Davidson, Marilee Roberg, Pedersen & Houpt, Chicago, Ill., for defendants.

## MEMORANDUM DECISION

JOAN H. LEFKOW, United States Magistrate:

Defendants Joyce Beverages, Inc. ("JBI") and John M. Joyce have moved under Rule 11 of the Federal Rules of Civil Procedure for an order imposing sanctions against the plaintiff, John Bannon, on the basis that allegations in the amended complaint, filed October 26, 1983, were not well grounded in fact and that Bannon knew that they were not well grounded in fact at the time he filed his amended complaint. Defendants contend that reasonable inquiry by Bannon's attorney would have revealed this circumstance; therefore, they are entitled to compensation for their needless expenses in discovering the truth. In response, plaintiff moves to defer hearing or ruling on the motion until the end of the litigation. Plaintiff has also filed a response on the merits arguing that he is entitled to a hearing and several other responses addressed below.

The factual setting is as follows: Bannon filed suit on July 25, 1983 alleging violation of federal securities laws and breach of fiduciary duty in connection with his sale of 5,021 shares of JBI stock under an Offer To Purchase Shares dated February 26, 1979. An amended complaint was filed October 26, 1983. In the amended complaint, Bannon alleged that nine items of information were either misrepresented or not disclosed to him at the time he made his decision to sell his shares.[1] Amended Complaint, Counts I and II, para. 8(a) through 8(i). He alleged that by means of these misrepresentations or omissions, defendants induced him to sell his shares at a price below their value.

In the course of discovery, specifically during the deposition of Bannon in July and August, 1986, defendants learned that Bannon in fact was aware of a number of the alleged omissions before he received the Offer To Purchase Shares and used his own independent knowledge in evaluating the stock. On October 1, 1986, Bannon filed a motion for leave to file a second amended complaint. In the proposed second amended complaint, he dropped four of the original alleged misrepresentations or omissions on which he claimed to have relied in accepting the Offer To Purchase Shares and added six new ones in each count. Bannon also dropped his allegation that the value of the shares at the time of the offer to purchase was "well in excess of $36.00 per share," Amended Complaint, Count I, para. 12, or "in excess of $60.00 per share," Amended Complaint, Count II, para. 10. Rather, based on a subsequent sale of JBI, he alleged that the shares were worth $130 a share. Proposed Second Amended Complaint, Count I, para. 13, Count II, para. 10.

Defendants have pointed to documents and deposition testimony showing that Bannon knew at the time he filed his original complaint that he had accepted the Offer To Purchase Shares with knowledge per-

1. These allegations were also in the original complaint. The focus is on the amended complaint, however, because the 1983 amendments to Rule 11 became effective August 1, 1983. Although it is certainly arguable that amended Rule 11 may be enforced as to the original complaint, the filing of the amended complaint with the same allegations makes it unnecessary to decide that issue.

taining to the four alleged nondisclosures. Their elimination from the second amended complaint is, in defendants' view, a belated admission that the allegation that plaintiff relied on them was not well grounded in fact.

■ The threshold issue is the motion to defer. Plaintiff's first argument is that the amendments to Rule 11 imposing an "objective reasonableness" standard for the filing of pleadings became effective August 1, 1983. The original complaint in this case was filed July 25, 1983, so plaintiff contends amended Rule 11 does not apply. This argument can be disposed of quickly. Plaintiff's amended complaint, filed October 26, 1983, contained the allegations at issue here. Thus there is no doubt that at least the amended complaint was subject to the rule.

Plaintiff's second argument has somewhat more substance. He relies on the Notes of the Advisory Committee on Rules, comment to Rule 11, indicating that if the motion arises out of pleadings it will "normally" be determined at the end of the litigation:

> A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so. The time when sanctions are to be imposed rests in the discretion of the trial judge. However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions, at the time when the motion is decided or shortly thereafter. The procedure obviously must comport with due process requirements....

The logic of a distinction between motions and pleadings is that sanctions should not be imposed until a matter is resolved on the merits to ensure that all relevant facts are before the court. With a motion, this would be after ruling at any time, but with pleadings, it is normally at the end of the case. To justify a ruling at this time, defendants make a weak attempt to characterize their request for sanctions as based on the motion to file a second amended complaint rather than the pleading itself. The argument is thin. It is not the motion to amend that is at issue; it is the amended complaint.

■ Nevertheless, the argument to defer is not compelling in this case because plaintiff is attempting to *delete* the allegations from his complaint by the pending motion to amend. If granted, these allegations are gone and obviously no further development of those facts in discovery or at trial will occur. Even if denied, plaintiff is obviously taking the position that these allegations are not material to his claim for relief. In addition, plaintiff in opposition to the motion makes no contention that the quoted portions of plaintiff's deposition on which the motion is based have been misunderstood or taken out of context. Thus, it must be concluded that he concedes the fact issues. Under these circumstances, deferring the motion to compel lacks force, for the sanctions issue will only grow cold and stale as it ages. The motion to defer, therefore, will be denied.

On the merits of the motion, defendants first point out that in order to prove a private right of action under section 10(b) and Rule 10(b)(5) of the federal securities laws, plaintiff must establish that defendants made a material misrepresentation or omission, with intent to deceive the plaintiff, and some causal connection between the deception and the injury to the plaintiff. Ordinarily, the causal connection is reliance by the plaintiff on the misrepresentation. But when liability is premised on an omission or non-disclosure, reliance is presumed from a showing that the omission or non-disclosure was material. *Issen v. G.S.C. Enterprises, Inc.*, 508 F.Supp. 1278, 1287, (N.D.Ill.1981), and cases cited therein. On the other hand, in some circumstances "even lies are not actionable". *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 529–30 (7th Cir.1985). One of those circumstances was articulated in *Teamsters* as follows:

> If the investor already possesses information sufficient to call the representa-

tion into question, he cannot claim later that he relied on or was deceived by the lie. . . . If the investor knows enough so that the lie or omission still leaves him cognizant of the risk, then there is no liability. . . .

*Id.* at 530.

Defendants then point to four paragraphs of the amended complaint which allege non-disclosures and omissions, as well as plaintiff's allegations that he relied on those non-disclosures and omissions. Specifically, paragraph 8(a) alleges that the Offer To Purchase Shares was addressed to all shareholders, but the defendant John M. Joyce never intended to sell his shares pursuant to the offer to purchase but rather intended to increase his own ownership of the company. At his deposition on July 23, 1986, counsel for defendants pointed to language in the offer to purchase excepting from the offer "certain shareholders who have transferred their shares into a voting trust pursuant to a Voting Trust Agreement. . . ." Transcipt of Bannon deposition ("Tr.") at 222. Counsel asked plaintiff,

> Did that not indicate to you that this Offer was not being made to Jack Joyce and to others who were—who had transferred their shares into the voting trust?
> ANSWER: Yes.

*Id.* at 223.

Paragraph 8(c) of the amended complaint alleges that defendants failed to disclose that defendant John M. Joyce was a party to shareholder litigation in the United States District Court for the Southern District of New York, failed to disclose that the litigation pertained to the shares of stock which are the subject of this action, and failed to disclose that the United States Court of Appeals for the Second Circuit had ruled that the allegations of that complaint, if proven, would constitute violations of the Securities Exchange Act of 1934. Bannon was asked at his deposition if, before he received the Offer To Pur-

chase Shares, he had read about the New York litigation and knew that John M. Joyce was a defendant there. Plaintiff answered, "Yes;" "Sure." Tr. at 114–15. He admitted it again later in the deposition. *Id.* at 208–09. He also admitted that before he received the offer to purchase, he had read at least two published articles in which Joyce was identified as a defendant in the New York litigation, the nature of the litigation was described, and (in one article) the ruling of the United States Court of Appeals for the Second Circuit was given. *Id.* at 102–03, 108–115.[2]

Paragraph 8(g) of the complaint alleges that defendants failed to disclose misconduct of Thomas Joyce, one of the JBI directors, consisting of misappropriation of property of the company to his personal use. At his deposition, plaintiff was asked, "Were you aware that these allegations had been made against Thomas Joyce?", in reference to the misappropriation of corporate assets. Tr. at 113. Bannon answered, "Yes, I think so. I was. I don't know whether it came from there [a newspaper article] or not." *Id.* Bannon also admitted reading certain articles pertaining to these incidents prior to receiving the offer to purchase.

Paragraph 8(i) of the amended complaint alleges that defendants failed to disclose that the fair market value on February 26, 1979 and thereafter of defendants' assets was substantially greater than the value showed on the consolidated balance sheets provided to the plaintiff with the Offer To Purchase Shares. Bannon testified at his deposition that he knew that the financial statements reflected book value not "fair market" value and that, before accepting the Offer To Purchase Shares, he calculated his own figure for the fair market value of defendants' assets and stock based on the information in the financial statements. Tr. at 81–82, 99–100, 187–89, 302–36. At pages 331–32, he was asked,

> Rather, he acknowledged that his practice would have been to read an article such as this and then place it in his files. Tr. at 105–08.

---

**2.** The articles were produced by Bannon in discovery. Bannon did not admit reading the article covering the Court of Appeals decision.

Q: ... When you looked at the financial statement at any time between the time that you received the offer to purchase shares and the time you made your decision to sell your shares, did you attempt to calculate what you thought was the fair market value of your shares?

A: Yes....

I came up in the 75 to a hundred dollars per share net worth.

Bannon later testified that he thought the price offered was "[t]errible" but that he decided to sell anyway, stating, "At that point, I was 62 or 63 years old and ten years from now I'm 72 and maybe dead." *Id.* at 336. He gave additional reasons for selling including that there was no other market for his stock and that he had tried to pledge the stock as collateral for loans but the banks would not accept it. *Id.* at 82–83, 87, 188–95, 335–36.

With respect to this allegation, defendants also contend that plaintiff or his attorney purposely withheld documents demonstrating that Bannon had made his own calculations as to what he believed was the true value of JBI assets and stock before selling his shares. In a request for production of documents dated November 1, 1983, defendants requested documents relating to the fair market value of JBI assets at relevant times and documents relating to information furnished by defendants to plaintiff which was in plaintiff's opinion misleading, incomplete or deceptive. One responsive document was the financial statement that plaintiff received along with the Offer To Purchase Shares. This financial statement included balance sheet pages on which plaintiff had made his calculations referred to above, indicating that he should receive $75–$100 per share. Defendants contend that these materials were given to plaintiff in machine-bound form, but when they were produced in discovery, these materials were omitted, indicating that Bannon or his attorney intentionally acted to withhold both the fact and substance of his calculations from discovery, leading defendants to pursue discovery for three years on a factually unfounded claim.

Plaintiff then alleged in his complaint, paragraphs 11 and 12 of Count I and 9–10 of Count II that because of the alleged omissions and misrepresentations and in reliance on them, he sold 5,012 shares to JBI at a price of $36 a share, that defendants knew but did not disclose that the value of the shares was more than $36 and that the actual value of the shares at the time of the sale was more than $60 a share. Defendants argue, since Bannon admitted at his deposition that he believed before he sold the shares that they were worth at least $75 a share, he could not have relied on defendants' non-disclosures in deciding to sell at the offered price of $36.

■ Rule 11, in relevant portion, provides as follows:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harrass or to cause unnecessary delay or needless increase in the cost of litigation.

According to the Notes of the Advisory Committee, 1983 Amendment, one of the goals of the amendment to Rule 11 is "to streamline the litigation process by lessening frivolous claims or defenses." The standard to be applied is whether the allegation was reasonable under the circumstances:

The new language stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed under the rule. The standard is one of reasonableness under the circumstances. [Citation omitted] This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation. [Citation omitted]

The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.

*Id.* Although the Notes urge the courts to rely on the record in order to avoid satellite hearings on collateral issues, they also indicate,

> [W]hat constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or othe paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

> \* \* \* \* \* \*

> [I]n considering the nature and severity of the sanctions to be imposed, the court should take account of the state of the attorney's or party's actual or presumed knowledge when the pleading or other paper was signed....

*Id.* These remarks certainly suggest that matters outside the record might be significant in some cases. In any event, once the movant puts forth a prima facie showing that the facts as known to the plaintiff before he filed the complaint were not consistent with allegations in the complaint, certainly the burden shifts to the non-movant to explain that either the facts are not as they have been presented or that in spite of the facts the circumstances at the time the pleading was filed, reasonable inquiry having been made, justified making the allegations.

■ Plaintiff's response to the motion makes little attempt to meet this burden. He states,

> ... Defendants do not claim in their Motion that the allegations made by Plaintiff are not true. Rather, Defendants are apparently trying to contend that they have a defense to those individual allegations.

Plaintiff's Memorandum in Opposition to Motion for Sanctions at 2. This contention misses the point. The false allegation is reliance. Proof of the false allegation is in demonstration that plaintiff did not rely on the omissions and non-disclosures alleged in paragraph 8. Plaintiff has offered no explanation, however, for alleging that he relied on matters that apparently he did not rely on.

· Next plaintiff argues, "Even if that is the case, which plaintiff denies, the allegations which Plaintiff proposes to exclude from its second amended complaint may well be admissible on the issue of the intent required by the defendants or the issue of 'scienter'...." *Id.* Plaintiff's reliance, of course, has nothing to do with defendants' intent. And, as stated above, if plaintiff has eliminated the allegations, he must not believe them relevant.

■ Next, plaintiff contends that he is entitled to a due process hearing before the motion can be decided and such a hearing would require him to reveal portions of his attorney's work product in order to defend against the motion. If plaintiff sincerely believes that he must reveal his attorney's work product in order to defend on the motion, the proper procedure is to delineate precisely the issue to which work product would pertain and the nature of the work product (submitted for *in camera* inspection if need be). *See In re Uranium Antitrust Litigation,* 552 F.Supp. 517, 518 (N.D.Ill.1982) (burden is upon the person who asserts work product immunity to show document falls within it). Plaintiff has not done this, nor has he indicated with any substance that he disputes the facts as they are presented in defendants' motion. If there is no dispute of fact, a hearing to determine facts is not necessary.

The only substantive response that plaintiff has made to this entire motion is that he denies "the allegations of fraudulent conduct in the discovery process" concern-

ing the missing calculations. He states, "According to the records maintained by Plaintiff's attorney, no part of the Financial Statement was furnished to Defendants until Defendants made the formal request for same at the deposition of plaintiff, John Bannon." *Id.* at 3. Defendants point out, however, that despite the two applicable document requests, plaintiff and his attorney did not disclose the calculations concerning the fair market value of JBI's properties, plants and equipment, franchises and stock, which plaintiff made on the pages of the financial statement prior to selling his shares. Plaintiff has not denied the truth of this assertion or offered an explanation for its occurrence.

Although the court might contemplate possible explanations of defendants' prima facie showing that Rule 11 has been violated, plaintiff has failed to give one. All in all, plaintiff's silence speaks much louder than his words and the court must therefore rule in favor of defendants.

The most positive aspect of plaintiff's conduct is that counsel did take action to amend the complaint not long after the Bannon deposition occurred. "Attorneys who recognize (if belatedly) their duties under Rule 11 should not be penalized as harshly as those who never acknowledged the unreasonableness of their positions." *Brown v. Federation of State Medical Boards of the United States,* slip op. No. 82 C 7398 (N.D.Ill., April 29, 1986) [Available on WESTLAW, DCTU database].

3. Defendants contend that plaintiff's motion to file a second amended complaint is a concession not only that the allegations discussed herein were not well grounded in fact but also that his claim that he was defrauded into accepting inadequate consideration for his shares was unfounded. Defendants' Memorandum in Support of Motion for Sanctions at 4. The logic of this position is, presumably, if plaintiff sold for $36 when he had reason to believe the stock was worth $75, and he admitted certain other factors also influenced him, he surely was not misled by the defendants' non-disclosures. This contention transforms the Rule 11 motion into one for summary judgment, and the court finds no basis for such a sweeping conclusion in light of the remaining allegations of misrepresentations and omissions which may well have "altered the 'total mix' of information made available" to plaintiff. *Issen,* 508 F.Supp. at 1287,

All of this is to say that sanctions are appropriate mitigated somewhat by plaintiff's initiative to correct his error, which leads to the question of what is an appropriate sanction in this case. Rule 11 provides as follows:

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorneys' fee.

Defendants believe that they are entitled to compensation for their expenses and attorneys' fees attributable to discovering the proof that plaintiff did not rely on the four allegations. This is certainly a reasonable principle on which to proceed, even though I see some difficulty in calculating a dollar figure based on it. One significant factor is that the four allegations at issue are not dispositive of the entire case, for plaintiff also alleges in paragraph 8 that he relied on other non-disclosures and omissions.[3] The court concludes that the proper measure of sanctions will require defendants' counsel to calculate approximately what time they spent discovering the facts as presented on this motion[4] and the time devoted to preparation and presentation of

*quoting TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), or otherwise materially affected plaintiff's decision.

4. The court contemplates, for example, that those portions of the deposition pertaining to these issues should be approportioned as a fraction of the cost of the entire deposition. Approximately 75 pages of the Bannon deposition have been cited in support of the motion, which is approximately 15 percent of the 426 deposition pages. Thus, 15% of the cost of the deposition may be an appropriate index. This is not to say that no other attorneys' fees or expenses are involved, but any claimed expenses must be specifically related to the unnecessary effort required by the plaintiff's improper pleading.

the motion itself. This should be presented in the form of a declaration of fees, to which the opposing party may assert objections.

### ORDER

For the foregoing reasons, it is ordered:

A. The Motion To Defer Hearing on Defendants' Rule 11 Motion is denied;

B. Defendants' Motion for Sanctions Under Rule 11 is granted;

C. Defendant is to submit a declaration of reasonable attorneys' fees and expenses attributable to the issues presented in the motion, as discussed above, by February 13, 1987; plaintiff is given until February 27, 1987 to submit objections, and the court will enter an award promptly thereafter.

D. Objections to this ruling under Rule 72(a), Fed.R.Civ.P., may be deferred until the entry of a monetary award under paragraph C.